**UNITED STATES of America, Appellee,**

v.

**Luis A. AGUIRRE,
Defendant, Appellant.**

**No. 87–1483.**

United States Court of Appeals,
First Circuit.

Heard Jan. 4, 1988.

Decided Feb. 16, 1988.

Joseph A. Bevilacqua, Jr., Providence, R.I., for defendant, appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Luis Aguirre, along with one Azevedo, was indicted by a federal grand jury for distribution of 500 or more grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and for conspiracy to distribute the same. 21 U.S.C. § 846. Following a jury trial in the United States District Court for the District of Rhode Island, Aguirre was found guilty on the conspiracy count. He was sentenced on June 2, 1987 and now appeals.

To his credit, Aguirre eschews a shotgun approach to his predicament. He does not challenge the conduct of the trial proper, the sufficiency of the government's proof, or what transpired at sentencing. Instead, he trains his fire exclusively on the pretrial suppression hearing, sniping at the district court's failure to exclude evidence obtained during three separate searches. He claims that, because the fruits of these searches were used against him, the prosecution's case was shot full of taint and that his conviction should therefore be overturned. We are not convinced.

## I. OVERVIEW

It is unnecessary to recite the facts of this matter in exegetic detail. Rather, we offer an overview which we deem adequate to place matters into perspective. We will then refer to such other desiderata as may be pertinent as we discuss the district court's rulings.

Appellant's arrest was the culmination of an investigation which lasted for half a year. It occurred shortly after a government informant purchased a substantial quantity of cocaine from Azevedo on January 8, 1987. The purveyor was taken into custody late that afternoon, and identified "Luis" as his supplier.[1] Police surveillance was established at an apartment complex on New Road in East Providence, Rhode Island. Appellant and others thought to be

---

1. Taken in conjunction with other things that Azevedo said, and what else the authorities knew or could infer, they reasonably concluded that Aguirre was the "Luis" in question.

members of the ring were arrested in one fell swoop a few hours after nightfall. Subsequently, the lawmen conducted several searches. Three are of interest to us.

1. *The automobile search.* On the night of the arrest, federal agents undertook a warrantless search of a Mazda sedan which was parked in the apartment complex's lot and to which attention had been drawn during the January 8 surveillance at New Road. The authorities entered the automobile with keys seized from Juan Gonzalez, one of those arrested earlier that evening in Aguirre's company. On the car floor, the agents found a paper bag within a plastic bag; inside the paper bag was a large amount of currency, appellant's Colombian passport, and a manila envelope containing papers and memorabilia belonging to Aguirre.

2. *The Apartment #53 search.* That same night (January 8, 1987), a warrant was issued by a federal magistrate, pursuant to which the agents searched Apartment #53 at 65A New Road. Cash, a variety of keys, and an assortment of documentation (virtually all of which was linked, in one way or another, with defendant) were sequestered.

3. *The Apartment #3 search.* When arrested, appellant had numerous (unidentified) keys on his person. Piecing together the location of a possible "stash house" from an anonymous call and clues developed after the arrests, one of the agents—without a warrant—ascertained on January 16 that certain of these keys fit the locks at Apartment #3, 22 Margaret Street, Pawtucket, Rhode Island.[2] A warrant was obtained from the magistrate and a search ensued. Once again, incriminating evidence was found (including an advertising circular which corresponded with the casing in which a seized kilogram of cocaine had been wrapped).

After he was indicted, Aguirre moved to suppress the fruits of these three searches. The motions were uniformly denied. Sub-sequently, the government used the evidence at trial with apparently damning effect. In consequence of the appeal, we examine each of the suppression rulings for any hint of the manifold errors which appellant tells us abound.

## II. THE AUTOMOBILE SEARCH

■ We need not loiter long over this aspect of the matter. The district court decided that appellant had no expectation of privacy in the Mazda or its contents, and thus lacked "standing" to pursue the matter. We agree.

■ It is well settled—and Aguirre acknowledges—that the fourth amendment primarily protects legitimate privacy expectations. *E.g., Rakas v. Illinois,* 439 U.S. 128, 140–50, 99 S.Ct. 421, 428–34, 58 L.Ed. 2d 387 (1978). What courts have come to refer to as "standing"—the purchase necessary to come to grips with an allegedly illegal search or seizure—is unlike, say, the presumption of innocence: it does not automatically devolve upon every accused. *United States v. Salvucci,* 448 U.S. 83, 90–91, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980). Before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized. *Id.* at 90–92, 100 S.Ct. at 2552–53. This burden must be carried at the time of the pretrial hearing and on the record compiled at that hearing. *United States v. Gomez,* 770 F.2d 251, 253 (1st Cir.1985). *See* Fed. R.Crim.P. 12(b)(3). Unless and until the "standing" threshold is crossed, the *bona fides* of the search and seizure are not put legitimately into issue.

■ We have often catalogued the sort of factors which are pertinent to this threshold inquiry: ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to

---

**2.** In order to make this determination, the agent (special deputy marshal Henry Roy) went to the premises. He had no warrant at the time. According to testimony given at the suppression hearing, Roy merely "fit the key in and determined that that key did fit into the lock at ... Apartment #3 at 22 Margaret Street." There was no evidence that the marshal actually opened the door or peered into the apartment. He did not enter the residence at that time.

regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. *See, e.g., Gomez,* 770 F.2d at 254; *United States v. Lochan,* 674 F.2d 960, 965 (1st Cir.1982). We look, in short, to whether or not the individual thought of the place (or the article) as a private one, and treated it as such. If the movant satisfies us on this score, we then look to whether or not the individual's expectation of confidentiality was justifiable under the attendant circumstances. Whatever facts may shed light upon either step of this two-tier inquiry may be weighed in the balance.

In this case, the district judge gave appellant ample opportunity to demonstrate in these terms that he enjoyed the requisite standing to savage the search of the car—but nothing materialized. There was no evidence that Aguirre owned or leased the Mazda, or that it was registered to him. There was no evidence that he even possessed keys to the vehicle or had used it on prior occasions.[3] The litany of negatives could go on, but to no useful end. The record of the suppression hearing is barren of any proof tending to show that appellant had exhibited the slightest subjective expectation of privacy vis-a-vis the vehicle. And in all events, given the paucity of the proffer, no such subjective expectation, viewed objectively, could conceivably have been justified.

Before leaving the point, we add but a few words as to a subsidiary argument voiced by Aguirre. He contends that, since the bag-within-a-bag contained effects personal to him—for example, his passport, letters, and photographs—he had standing to challenge that seizure, even if not the search of the vehicle as a whole. But this argument misperceives the prophylaxis which the fourth amendment affords. The most intimate of documents, if left strewn about the most public of places, would surely not be shielded. That the items seized were appellant's personal effects was a mark in his favor—but without competent evidence to show that they were left in a place and under circumstances which could (and did) justifiably give rise to an expectation of privacy,[4] the mark fell far short.

## III. THE APARTMENT # 53 SEARCH

The search of Apartment # 53, located at 65A New Road, was conducted pursuant to a warrant. The district court found the warrant for the search of this dwelling—apparently Aguirre's place of residence, or one of them—to have issued upon probable cause. We review such findings only for clear error. *United States v. Hoffman,* 832 F.2d 1299, 1306 (1st Cir.1987); *United States v. Figueroa,* 818 F.2d 1020, 1024 (1st Cir.1987). We spy none here.

We have lately remarked that " '[p]robable cause' need not be tantamount to 'proof beyond a reasonable doubt.' " *Hoffman,* 832 F.2d at 1305–06. It is enough if the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been

---

**3.** We recognize that, in his appellate brief, Aguirre asserts that he used the car, had possession of it, and stored a bag therein. As far as the record is concerned, these assertions—like the storied lady of the evening—are without visible means of support. In any event, we cannot consider such newly-emergent surmise: "evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before [the court of appeals]." *United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir.1983). This is doubly so in respect to a matter such as suppression, where—absent exceptional circumstances not here present—the operative facts are only those which were presented to the lower court during the pretrial suppression hearing. *See* text *supra* at 856.

**4.** Without limiting the generality of this observation, we note by way of illustration that appellant offered no evidence that the multiple containers were his, that he had placed the effects within them, that he had stowed the bag(s) in the vehicle, or that any of these actions had been undertaken on his behalf or at his direction. Similarly, he entirely failed to prove that he had any protectable interest in the automobile, that he exercised any control over it, that he maintained it for his own use, or that he had the means to exclude others from its interior.

committed and that there is sound reason to believe that a particular search will turn up evidence of it. *See Illinois v. Gates,* 462 U.S. 213, 230–35, 238, 103 S.Ct. 2317, 2328–31, 2332, 76 L.Ed.2d 527 (1983); *Brinegar v. United States,* 338 U.S. 160, 169–71, 69 S.Ct. 1302, 1307–08, 93 L.Ed. 1879 (1949). "Probability is the touchstone...." *Figueroa,* 818 F.2d at 1023.

■ In this case, the totality of the circumstances filled the government's probable cause cup to the brim. In brief, the affidavit which underbraced the warrant showed among other things that the federal agents had a reliable and confidential informant who transacted a major drug purchase with Azevedo on the very day the warrant was sought (January 8, 1987); Azevedo's Ford pickup truck, which had been used to facilitate this buy, was parked later that day at the New Road address; and a second confidential informant, also thought dependable, purchased cocaine from appellant in Apartment # 53 shortly before January 8. Although the sworn statement contained substantially more, we need not proceed. These facts alone, under an objective standard, were enough—especially in a case like this one, where the affidavit contained sufficient reason to believe that the informants possessed the requisite indicia of dependability and where there was independent corroboration for much of their data.

We recognize that appellant claims that the affidavit was too conclusory, but we have reviewed it carefully and cannot agree. What Aguirre sees as unsupportable assumptions are more properly to be regarded as founded conclusions, well within the ken of street-wise agents "specially trained in the ways of drug trafficking". *Hoffman,* 832 F.2d at 1306. As to the minor imperfections which appellant purports to find with the informers, they do not meaningfully mar the presentation. An informant need not present an entirely unblemished face to law enforcement; a pimple or two are not automatic disqualifiers. So long as adequate badges of relia-

bility attend the proffer—and that was true in this case—"there is no requirement that the tipster be letter perfect in every particular." *Figueroa,* 818 F.2d at 1024 (citations omitted). All in all, the information given to the magistrate in this instance revealed probable cause aplenty. The district court's finding upholding issuance of the warrant was not clearly erroneous.

■ Appellant advances one further argument concerning this search. During the episode, the authorities seized a set of keys—which, as matters turned out, were the keys to Azevedo's Ford pickup truck. Defendant claims the searchers went too far: their warrant did not authorize the taking of automobile keys. Aguirre's underlying premises are undeniably valid; the fourth amendment requires that a warrant "particularly describ[e] the ... things to be seized," U.S. Const. Amend. IV, and the warrant to search Apartment # 53 did not mention keys to a vehicle. Nevertheless, the conclusion to which appellant seeks to leap from this sturdy springboard remains well beyond his range. The district court found, supportably, that the keys, conspicuously marked front and back with Ford's insignia, were in plain sight when the search began. We examine this rationale.

The "plain view" doctrine constitutes a recognized exception to the "particularity" prong of conventional fourth amendment jurisprudence. We noted in *United States v. Johnston,* 784 F.2d 416 (1st Cir.1986), that three requirements must be fulfilled to animate the exception: "that the seizing officer have a prior justification for being in a position to see the item in plain view, that the discovery of the item be inadvertent, and that the evidentiary value of the item be 'immediately apparent' to the officer." *Id.* at 419. The Supreme Court has recently placed special emphasis on the basic underpinning of the *Johnston* criteria, stressing that the seizure must be grounded in probable cause. *Arizona v. Hicks,* — U.S. ——, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987).[5] These conditions were unquestionably met in this instance.

---

5. In our second look at the legality of what had transpired in Johnston's case, *Johnston v. United*

*States,* 832 F.2d 1 (1st Cir.1987) (per curiam), we found the original holding in *Johnston,* 784

First, the agents had a valid warrant to search the premises, and thus an unimpeachable justification for their presence. Second, the keys were out in the open, on a counter top; they were not themselves the object of the search. Their discovery was altogether fortuitous. Third, a convergence of elements made the significance of the find "immediately apparent": Azevedo had access to a Ford truck, it had been used earlier that day in one stage of the surveilled drug transaction, it had resurfaced at New Road, the officers had the truck under current observation, and the keys had been spotted in an apartment believed reasonably to be frequented by the gang. They bore the manufacturer's distinctive emblem. Last—but surely not least—the truck keys were seized upon probable cause. In this case, the material contained in the original warrant went a long way toward furnishing the necessary factual predicate. The obvious connection between the keys and the plot closed any remaining gap in the circle. This medley of facts and inferences was enough, and more than enough, to satisfy the imperatives of the Constitution and the "plain view" requirement. The agents had every right to impound the keys.

## IV. THE APARTMENT #3 SEARCH

In the court below, appellant unsuccessfully raised three challenges to the legality of the search at 22 Margaret Street. He argued that (1) the insertion of a key into the lock on the entrance door of the apartment, *see supra* at 856 and note 2, itself comprised an impermissible (warrantless) search; (2) the affidavit undergirding the subsequently-issued search warrant failed satisfactorily to demonstrate probable cause; and (3) the seizure of an advertising circular from within the dwelling exceeded the scope of the warrant. Appellant has not varied the menu; he serves up the same trilogy of complaints for our ingestion. We decline to partake.

While the district court addressed Aguirre's objections frontally (and overruled each of them), we think a different route advisable. Both below and on appeal, the government oppugned appellant's standing to contest this search. Though the district court went directly to the heart of the matter, we believe it to be better practice—at least where, as in this case, the answer to the inquiry is plain—to refrain from reaching the merits of a challenged search and seizure unless the movant has succeeded in crossing the standing threshold.

We have already explicated the requisites of standing in the relevant sense, *see supra* Part II, and it would be pleonastic to till that field anew. To mount a viable campaign against the search of Apartment #3—to cross the threshold, as it were—appellant had the burden of showing at the suppression hearing that he had a reasonable expectation of privacy in the unit and in relation to the articles seized. The record amply delineates his abject failure in this regard.

There was no evidence presented at the hearing to indicate that Aguirre owned or leased Apartment #3, or that he resided in the unit.[6] There was no proof that he kept personal effects—clothing or the like—on the premises. Although he possessed keys to the apartment, there was no proof of prior usage. There was no evidence of efforts to exclude others from enjoyment of the property, or of an ability to restrict access. There was no attempt during the suppression hearing to show that appellant had any interest in the items seized. Insofar as the transcript reveals, appellant had never manifested any expectancy of privacy in the premises or in the fruits of the search. By the same token, objectively viewed, there was no basis upon which such an expectation could have been justified.

On this standing issue, Aguirre's case is but a pale pastiche of *United States v. Gomez, supra.* There, like here, the search of an apartment was challenged.

---

F.2d at 419, to be entirely consistent with the imperatives of *Hicks.*

6. From what we can tell from the record, one Henry Jimenez was occupying the apartment at the time of the search.

*Gomez*, 770 F.2d at 254. There, like here, defendant offered no proof at the suppression hearing that he was residing in the apartment or personally using it. *Id.* at 254–55. There, like here, there was no intimation "that the information the defendant needed to [show standing] was not available on time for the pretrial hearing on his suppression motion." *Id.* at 253. There, like here, "appellant offered no legitimate explanation or excuse for his failure to present evidence at the suppression hearing." *Id.* We affirmed the district court's denial of the motion to suppress at the threshold stage, holding that "the defendant clearly failed to sustain his burden of proving a legitimate expectation of privacy." *Id.* at 255. And we so held despite the prosecution's concession that the named defendant, unlike in this case, was the lessee of the apartment and had lived there at some previous time. *Id.* at 254.

*Gomez* plainly controls in this instance. The only positive differentiating factor which cuts in Aguirre's favor is that he had keys to the dwelling in his possession[7]—and this circumstance, without more, is far too friable to tip the balance. Appellant had no standing to protest the search conducted at 22 Margaret Street. He has failed to traverse the threshold, rendering it unnecessary to consider his remaining assignments of error.

## V. CONCLUSION

We need go no further. The district court properly confronted and disarmed the battery of suppression motions. In the last analysis, the record makes manifest that the appellant was firing blanks. Although Aguirre phrases his disappointment with the challenged proof—a collection of factual details which placed him in the maw of this drug-trafficking enterprise—in the idiom of taint, his only authentic complaint with the evidence seems to be that it sealed his fate.

*Affirmed.*

7. It is not clear from the text of the *Gomez* opinion whether the defendant in that case had

keys to the flat. For Aguirre's benefit, we assume *arguendo* that he did not.