**UNITED STATES of America,**
**Appellant,**

v.

**Joseph RUTKOWSKI,**
**Defendant, Appellee.**

No. 88–1730.

United States Court of Appeals,
First Circuit.

Heard April 5, 1989.
Decided June 9, 1989.

Ralph C. Martin, II, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for U.S.

Joseph S. Callahan, Fall River, Mass., for Joseph Rutkowski.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

In this criminal case, the district court suppressed certain evidence, ruling that the items seized were beyond the scope of the officers' warrant and did not fall within the plain view exception to the fourth amendment. The government appeals the pretrial suppression order pursuant to 18 U.S.C. § 3731. We affirm.

## I. BACKGROUND

On November 21, 1985, a state trooper, Robert Friend, obtained warrants to search various premises frequented by defendant-appellee Joseph Rutkowski: Rutkowski's home, summer cottage, and boat house.[1] The warrants described the objects to be seized as "stolen handguns, jewelry and coins." A supporting affidavit explained that the items had been taken in a Brockton, Massachusetts housebreak some seven months earlier. The affidavit incorporated the police report (which, in turn, limned the circumstances of the heist and the nature of the purloined property).

Friend, in command of a decemvirate of lawmen, executed the search warrant later that day. By invitation, Special Agent Daryl Diotte of the United States Postal Service accompanied the search party. The search, which covered Rutkowski's apartment, a common basement in the apartment house, and a detached garage, began shortly after 3:00 p.m. During roughly six hours of exploration, the officers seized over 300 items, including tools, electronic gear, twelve pounds of platinum, a bag of jewelry, a gun, and miscellaneous household effects. As matters turned out, none of the items—including the jewelry and the weapon—had been described in the warrant paperwork or taken in the Brockton burglary.

The platinum is the cynosure of this appeal. The troopers came across it approximately five hours into the search. Behind a layer of wall insulation in the basement, a coffee can was found; inside the coffee can were several envelopes; inside the envelopes were pieces of what appeared to be virgin metal. Friend testified that he was aware that some platinum had been stolen from a United States Post Office in West Chester, Pennsylvania. Although he was unsure of the composition of the metal strips, he seized them. At search's end, he contacted Diotte (who had left Rutkowski's apartment earlier) to tell him of the discovery. A day or two thereafter, Friend brought the metal to the State Police laboratory, where it was identified for the first time as platinum. Friend then provided Diotte with samples for more sophisticated analysis. Eventually, the authorities concluded that the seized pieces had been stolen from the post office.

A federal grand jury indicted Rutkowski for unlawful possession of matter stolen from the mail, i.e., the platinum, in violation of 18 U.S.C. § 1708. He promptly moved to suppress, claiming that seizure of the platinum transgressed his constitutional rights. Following an evidentiary hearing, the district court ordered suppression, rejecting the government's argument that the seizure was lawful under the plain view doctrine. *United States v. Rutkowski*, Cr. No. 88–103–H (D.Mass. June 24, 1988). This appeal followed.

## II. PLAIN VIEW

The plain view doctrine constitutes an exception to the warrant requirement of the fourth amendment. Under certain circumstances, evidence discovered in plain view may be lawfully seized even though the police were not originally authorized to search for it. *See Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed. 2d 347 (1987). The exception applies if three criteria are met. First, the officers' presence at the point of discovery must be

---

* Of the District of Massachusetts, sitting by designation.

1. This appeal concerns only the search of Rutkowski's principal residence in Fall River, Massachusetts. Accordingly, we will not refer again to the companion searches.

lawful. Second, discovery of the seized item must be inadvertent. Third, the item's evidentiary value must be immediately apparent to the searchers. *See Texas v. Brown,* 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 465–70, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. Garcia–Rosa,* 870 F.2d 209, 218–19 (1st Cir.1989); *United States v. Aguirre,* 839 F.2d 854, 858 (1st Cir.1988); *United States v. Johnston,* 784 F.2d 416, 419 (1st Cir. 1986) (*Johnston I*). One can think of these three criteria as comprising (1) justifiable presence, (2) inadvertent discovery, and (3) immediate awareness.

■ We will reverse a district court's decision as to the availability of the plain view exception only for clear error. *United States v. Doherty,* 867 F.2d 47, 66 (1st Cir.1989), *pet. for cert. filed* (Apr. 1, 1989); *United States v. Gilliard,* 847 F.2d 21, 24 (1st Cir.1988), *cert. denied* — U.S. —, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); *United States v. $10,000 in U.S. Currency,* 780 F.2d 213, 220 (2d Cir.1986). The government, of course, has the burden of establishing entitlement to the exception, which means that it must demonstrate in any given case that each and all of the three criteria were satisfied. *See Coolidge,* 403 U.S. at 455, 91 S.Ct. at 2032; *United States v. Chesher,* 678 F.2d 1353, 1356 (9th Cir.1982); *United States v. Weber,* 668 F.2d 552, 565 (1st Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2904, 73 L.Ed.2d 1313 (1982); *see generally United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951) (government always has burden of proving applicability of exceptions to the warrant requirement); W. La-Fave, *Search and Seizure* § 11.2(b) at 218 n. 23 (2d ed. 1987) (same). Thus, the question before us reduces to whether the district court committed clear error in determining that the government failed to construct the solid tripodal base on which the plain view doctrine must rest.

**Justifiable Presence**

■ Although we acknowledge that Rutkowski has consistently questioned the validity of the search warrant, we believe that contention to be shaky and decline to address it. At least for now, we assume the warrant's validity. Thus, we regard the troopers' entry into the dwelling as lawful. What is more, there is no meaningful evidence that the search exceeded the scope and intensity which the warrant authorized. Friend had a right to be where he was, looking at what he was looking at, when he came across the pieces of metal: after all, the warrant authorized a search of the entire premises for easily-hidden objects like jewelry and coins. In executing the warrant, therefore, the troopers had every right to examine the basement and to inspect the area behind the wallboard. They also had a right to look inside both the coffee can and the envelopes. As we have said:

> As a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.

*United States v. Gray,* 814 F.2d 49, 51 (1st Cir.1987). *See also United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982) (lawful search is not circumscribed because further acts of opening may be necessary); *Doherty,* 867 F.2d at 66 (searchers could open manila envelope); *United States v. Gomez–Soto,* 723 F.2d 649, 654 (9th Cir.) (police could inspect contents of briefcase), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *United States v. Crouch,* 648 F.2d 932, 933 (4th Cir.) (officers entitled to remove contents of envelopes), *cert. denied,* 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981). Because the officers had a warrant which authorized them to look for, and to seize, relatively small items, they were entitled to open the coffee can, and subsequently, the envelopes.

In sum, the first requirement for application of the plain view doctrine was clearly

met. On this record, there is no legitimate reason to question that "the seizing officer [had] a prior justification for being in a position to see the [platinum]." *Johnston I,* 784 F.2d at 419.

### Immediate Awareness

We next consider the district court's conclusion that "the incriminating nature of the platinum was not immediately apparent." This conclusion, we think, is eminently supportable.[2]

■ The principle upon which the "immediate awareness" prong of the plain view exception operates is akin to that underlying the incandescent light bulb. When an officer spots an object not described in the warrant, authority to seize depends upon knowledge—the extent to which bits and bytes of accumulated information then and there fall into place. The sum total of the searchers' knowledge must be sufficient to turn on the bulb; if the light does not shine during the currency of the search, there is no "immediate awareness" of the incriminating nature of the object. Put in more conventional terms, the officers' discovery of the object must so galvanize their knowledge that they can be said, at that very moment or soon thereafter, to have probable cause to believe the object to be contraband or evidence. *See Hicks,* 480 U.S. at 326, 107 S.Ct. at 1153; *Johnston v. United States,* 832 F.2d 1, 3 (1st Cir.1987) (*Johnston II*); *Emery v. Holmes,* 824 F.2d 143, 149 (1st Cir.1987). *Hicks* illuminates the extent to which the incriminating nature of the spotted object must be "apparent." There, the Court ruled flatly that "reasonable suspicion" of inculpation was not enough. *Hicks,* 480 U.S. at 326, 107 S.Ct. at 1153. Allowing seizure of evidence under the plain view doctrine upon any standard less than probable cause, the Court reasoned, would allow officers to use the doctrine as a device "to extend a general exploratory search from one object to another until

something incriminating at last emerges." *Id.* at 328, 107 S.Ct. at 1154). (quoting *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038).

■ In this case, the district court concluded that the light bulb had not been electrified. Given the calculus of probable cause and the uncertainties which pervade the record, we are unable to say that the court was clearly wrong. At the outset, we remark the court's finding that Friend—a person who possessed no expertise in identifying precious metals—did not recognize the platinum as platinum when he seized it. The court also found that the platinum was not determined to have been stolen until a "much later" time. These are findings of fact, sufficiently record-rooted to command our respect. That being the case, it becomes surpassingly difficult to posit error in the court's follow-on finding that, whatever suspicions Friend harbored regarding the envelopes' contents, there was no probable cause at the time of seizure. While the evidence in this record did not *compel* the district court to conclude that the government failed to carry its burden, we believe the evidence plainly *permitted* such a conclusion.

To be sure, " '[p]robable cause' need not be tantamount to 'proof beyond a reasonable doubt.' " *United States v. Hoffman,* 832 F.2d 1299, 1305–06 (1st Cir.1987). The requirement of immediate awareness does not mean that the searching officer must have a "near certainty" about the incriminating nature of the seized item. *See Brown,* 460 U.S. at 741, 103 S.Ct. at 1543. On the other hand, the requirement is not a toothless tiger. The standard is an objective one, calling into focus more than mere hunch, guesswork, and cop-on-the-beat intuition. The prosecution must show that "the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown,* 460 U.S. at 742,

---

**2.** The district court likewise found that "discovery of the platinum was anything but inadvertent." The viability of this conclusion seemingly presents a much closer question. Inasmuch as the "immediate awareness" criterion

was not met, however, it is unnecessary to consider whether inadvertency was also lacking. *See supra* at 5 and cases cited (to invoke plain view exception, prosecution must prove existence of all prerequisites).

103 S.Ct. at 1543 (citations omitted). And, as in kindred situations where cause is at issue, "[p]robability is the touchstone." *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir.1987).

We turn to the facts and the reasonable inferences sustainable therefrom. The incriminating nature of the metal seems to have been considerably less than apparent. In this connection, we think it significant that possession of platinum is not itself illegal. Furthermore, when Friend found the metal in the envelopes, he was not able to identify it as platinum—much less to identify it as stolen platinum.[3] And, although Friend did testify to an awareness that platinum had been stolen from a Pennsylvania post office, he did not advance any reason to connect Rutkowski with that robbery.

Also, the record can plausibly be read to support the idea that whatever awareness the troopers came to possess was gradual rather than immediate. By Friend's own account, determining the metal's inculpatory nature was a bifurcated process, begun after seizure and not completed for several days. Friend did not consult Diotte until the search was over. At that juncture, the postal inspector was unable to identify the strips or determine whether they were stolen. The district court could well have found that 48 hours elapsed before the metal was authoritatively identified as platinum; and that it took a much longer time to ascertain that the metal comprised the platinum stolen during the post office robbery. Taking the entire mise-en-scène into account, it cannot be said that the facts available to Friend before the search's conclusion would *necessarily* have led a reasonably cautious lawman to believe that the metal strips were stolen property.

We summarize succinctly what the record tells us. Here, unlike in certain of the cases relied on by the United States, *see infra,* the totality of the circumstances fails to energize the plain view exception. There is no showing either that the seized property was incriminating *by virtue of its* *intrinsic nature* or that some discernible nexus existed between the seized items and the criminal activity underlying the outstanding warrant, making the metal's inculpatory character apparent. Given the fact that neither the discoverer nor the "expert" with whom he first consulted was able to identify the metal or determine its provenance *at the time of the search,* the district court's deduction that the metal strips' incriminating nature was not immediately apparent cannot be upset. *Compare, e.g., United States v. Szymkowiak,* 727 F.2d 95, 99 (6th Cir.1984) (where executing officers unable to determine by visual observation whether weapons were automatic, and therefore illegal, and expert from another agency unable to associate the discovered evidence with criminal activity without disassembly, "probable cause ... was neither 'immediate' nor 'apparent' ").

Before leaving this subject, we take a moment to point out why, in our judgment, the government's three lighthouse cases are distinguishable. In *United States v. Aguirre,* we upheld the seizure, without a warrant, of keys found in plain sight. We explained that "the material contained in the original warrant went a long way toward furnishing the necessary factual predicate [to establish probable cause]. The obvious connection between the keys and the plot closed any remaining gap in the circle." 839 F.2d at 859. Here, in stark contrast, the warrant did not contain any facts which helped to establish probable cause to believe that the metal was stolen. And, there was no connection at all between the platinum and the housebreak upon which the warrant was bottomed.

In *Johnston I,* the issue on appeal was whether the searchers "ha[d] the knowledge based on facts *available to them at the time of the search,* of [the seized] items' criminal nature." 784 F.2d at 420 (emphasis in original). We recognized that, even though the incriminating nature of the paraphernalia (loose pages and adding machine tapes) was not apparent upon the

---

**3.** His words were these: "I didn't know whether it was gold, platinum, boronium, whatever, but I mean I may have guessed that it might be platinum."

evidence's discovery, it was obvious before the search ended. *Id.* at 420–21. There, "[t]he suggestion of marijuana trafficking, the presence of a large amount of cash, and the proximity of the pages to the marijuana" were sufficient to establish a probability that the seized items constituted evidence of drug transactions. *Id.* at 421. But in the instant case, unlike in *Johnston I,* the incriminating nature of the seized metal was not apparent at any time during the search. It was not until several days later that the requisite probability arose. That was too little, too late. *See, e.g., Szymkowiak,* 727 F.2d at 98–99.

Appellant's reliance upon *United States v. Meyer,* 827 F.2d 943 (3d Cir.1987), is equally mislaid. There, the Third Circuit ruled that the incriminating nature of a bag of 47 wrist watches found on premises occupied by a known "fence" was immediately apparent for purposes of the plain view exception. *Id.* at 945. Yet, the circumstances of *Meyer* were entirely dissimilar: the searchers had probable cause to believe Meyer Trading Company (MTC) to be receiving and reselling stolen goods; the officers had obtained a warrant to search for items burglarized elsewhere and supposedly received by MTC; the watches were located in a crawl space with other containers which, without exception, contained merchandise listed in the warrant and known to be purloined. *Id.* at 944–45. And when the agents, during the search, asked for evidence of legitimate ownership of the watches, none was produced. These facts, we suggest, generated far more candlepower than the case at bar, where (1) the troopers had no evidence connecting the premises searched with the storage of items stolen from the mails, (2) Rutkowski was not suspected of a link to the West Chester robbery or the theft of precious metals from the post office,[4] and (3) the platinum was not stored with other goods known to be stolen. There is, of course, another bright-line distinction: whereas it is difficult to conceive of a plausible (innocent) explanation for possessing 47 wrist watches and squirrelling them away in a crawl space rather than in one of many safes on the premises (as in *Meyer*), hiding precious metal in one's home, as was done in this case, could plausibly be explained as an innocent precaution similar to concealing money in a mattress or burying gold in one's back yard.

## III. CONCLUSION

Perhaps, if viewing the case through a fresh glass, we might have seen the bulb glowing earlier and more brightly, thereby altering the outcome of this suppression motion. But, whether or not we, if sitting as a court of first impression, would have called the same tune is beside the point. To a large degree, factual matters are for the district court. *See, e.g., Reliance Steel Products Co. v. National Fire Ins. Co.,* 880 F.2d 575, 576 (1st Cir.1989) (fact-specific disputes constitute "the staples of a trial court's diet, and compromise an unappetizing, usually unnourishing, bill of fare for appellate digestion"). Where, as here, the trier's conclusions depend upon his assessment of the witnesses' credibility and his determination as to which illations are logically inferable from evidentiary facts, the scope of our review is greatly circumscribed. As the Court has taught: "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This appeal slips neatly into the *Anderson* integument.

We need go no further. Following an examination of the record as a whole, and mindful of the need for courts to delineate exceptions to the fourth amendment's warrant requirement "jealously and carefully," *Coolidge,* 403 U.S. at 455, 91 S.Ct. at 2032 (quoting *Jones v. United States,* 357 U.S.

---

**4.** At the suppression hearing, Friend admitted that he had no prior reason to suspect Rutkowski of involvement in the Pennsylvania heist or in theft of platinum. He had originally invited Diotte to join the search party not because of any such suspicions, but because he had (for some unspecified reason) formed a belief that appellee might be in possession of counterfeit stamps.

493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958)), we find no sufficient sign that the district court got its wires crossed. Accordingly, there was no reversible error in the determination that seizure of the metal strips fell outside the purview of the plain view doctrine.

*Affirmed.*