**UNITED STATES of America**

**v.**

**Byron JONES, et. al., Defendant.**

**Criminal No.  12–cr–10084–PBS.**

United States District Court,
D. Massachusetts.

June 11, 2013.

Christopher J. Pohl, United States Attorney's Office, Boston, MA, for Plaintiff.

Edward J. Lee, Attorney at Law, Boston, MA, for Defendant.

## *MEMORANDUM*

SARIS, Chief Judge.

### I. INTRODUCTION

Defendant Bryon Jones moves to suppress evidence seized from 122 Melville Street in Fall River, Massachusetts on the ground that the warrant lacked particularity, the Fall River officers did not have authority to execute the warrant, and that the information in the warrant was stale when it was executed. Defendant also ar-

gues that the audio and video evidence from the concealed video device worn by a Cooperating Witness in the course of the investigation violated his Fourth Amendment right against unreasonable searches.

After an evidentiary hearing, at which Byron Jones and Agent Carl Rideout testified, the motion is *DENIED.*

## II. FACTS

### A. The Cooler

In November 2011, the Drug Enforcement Administration and local law enforcement authorities began investigating possible narcotics trafficking activity involving Jones and co-defendant Meaghan Murphy at 122 Melville Street. After conducting preliminary surveillance, agents used an undercover police officer to order crack cocaine from an individual whom they observed to be a customer of Jones and Murphy. On November 21, 2011, the customer sold the undercover agent an ounce of crack cocaine after leaving 122 Melville Street. On December 8, 2011, agents stopped and searched the customer after again observing the customer leaving 122 Melville Street. The search led to the recovery of a bag that contained approximately 63 grams of crack cocaine. Thereafter, the customer agreed to assist law enforcement as a Cooperating Witness ("CW") by participating in two controlled purchases of narcotics from 122 Melville Street. On December 15, 2012, after exchanging text messages with Jones, the CW purchased an ounce of cocaine from Murphy at the Melville Street apartment. Jones was not present. On January 3, 2012, after again exchanging text messages with Jones, the CW planned to meet Jones at the Melville Street apartment. Equipped with an audio-video recording device, the CW met Jones at the apartment and followed him into the building. In the upstairs living room area, while the CW sat on the couch, Jones retrieved a red cooler from a nearby closet and sold the CW an ounce of cocaine from the cooler. This transaction, which took place in the kitchen, is not visible on the video recording, nor does the audio recording indicate that Jones or the CW ever discussed the sale of narcotics.

As a result of this investigation, Special Agent Rideout obtained arrest warrants for Jones and Murphy. He also applied for warrants to search Melville Street and other locations for narcotics and other related evidence. The application for the search warrant included an affidavit by Agent Rideout. The warrant itself, in lieu of stating the person/property to be searched and the property to be seized, instead stated "See Attached Affidavit." The affidavit gave a physical description of the Melville Street apartment and summarized the details of the DEA investigation, including descriptions of the December 15, 2011 and January 3, 2012 controlled buys, audio and video surveillance from the CW's January 3 purchase, and agents' observations made through their continuous surveillance efforts. The affidavit stated that the Agent Rideout believed that "illegal narcotics, U.S. currency, documents and other records detailing the purchase, possession, and distribution of crack cocaine, the proceeds of such drug trafficking, telephones or communication devices used to facilitate the distribution of illegal drugs, and other evidence of violations of 21 U.S.C. § 846" would be located at the apartment. Rideout Aff. 2–3. The affidavit was sealed.

On January 13, 2012, Magistrate Judge Bowler approved the warrant applications and issued the search warrants, including the warrant for the Melville Street apartment. The Melville Street apartment warrant was valid until January 27, 2012. It was executed on January 24, 2012.

## B. Tabling the Warrant

The Fall River Emergency Services Unit was the first to arrive at the Melville Street apartment to execute the search warrant. Jones and his girlfriend, Jeanine Jackson, were in the upstairs living room. Jones was in his boxers. The officers handcuffed them and sat them on the floor. Next, Agent Rideout arrived at the scene, identified himself and notified Jones that he had a warrant to search the upstairs apartment. Jones immediately asked to see a copy of the search warrant, but his request was denied by Agent Rideout. At the time of the search, Agent Rideout had in his possession a copy of the search warrant with supporting affidavit. Jones said that he did not see a copy of the affidavit. After conducting their search, the executing officers placed a copy of the first two pages of the Melville Street Warrant—the warrant itself and the return—on the table in the kitchen area. The executing officers then arrested Jones and released Jackson. Jackson returned to the Melville Street apartment the following day and retrieved a copy of the documents left by officers on the kitchen table (the search warrant and search warrant return, but not the sealed affidavit).

Pursuant to the search warrant, agents seized 607 grams of cocaine base from the red cooler, 499 grams of (85% pure) powder cocaine from a shelf in a closet, a kilo wrapper, a 3M respirator, boxes of baking soda, boxes of sandwich bags, and other items. Jones was subsequently charged by criminal complaint with possession, possession with intent to distribute, and distribution of cocaine base. Jones and Murphy were indicted on March 29, 2012.

## III. DISCUSSION

### A. Standing

■ As an initial matter, Defendant Jones must establish that he has "standing" to challenge the legality of the Melville Street apartment search. A defendant has standing to challenge the legality of a search on Fourth Amendment grounds only if he has a "legitimate expectation of privacy." in the place searched. *Rakas v. Illinois*, 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). One's subjective expectation of privacy must also be one that society accepts as objectively reasonable. *Minnesota v. Olson*, 495 U.S. 91, 95–98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). For example, the Supreme Court has held that a defendant's status as an overnight guest represents "a longstanding social custom that serves functions recognized as valuable by society" and was sufficient to show that he had a legitimate expectation of privacy. *Id.* at 98, 110 S.Ct. 1684. In contrast, visits that are primarily commercial, and not social, in nature, do not garner the same protection. *Minnesota v. Carter*, 525 U.S. 83, 89–90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). For example, defendants, who were in another person's apartment for a short time solely for the purpose of packaging cocaine, had no legitimate expectation of privacy in the apartment because they were "essentially present for a business transaction", were only in the home a matter of hours, and because "[t]here [was] no suggestion that they had a previous relationship with [the lessee], or that there was any other purpose to their visit." *Id.*

■ The defendant bears the burden of establishing his legitimate expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Until the standing threshold is crossed, "the *bona fides* of the search and seizure are not put legitimately into issue." *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir.1988) (emphasis in original) (noting that "[t]his burden must be carried

at the time of the pretrial hearing and on the record compiled at that hearing"). The First Circuit has cited the following factors as pertinent to this threshold inquiry: "ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." *Id.*

■ The standing issue is close. Under the *Aguirre* test, Jones does not have ownership. Jones was not named on any of the utility bills, he did not receive mail at the apartment and did not list the apartment on any applications or other address forms. Jones listed his residence as his girlfriend's apartment on the Massachusetts Registry of Motor Vehicles database. Further, police surveillance indicated his girlfriend's apartment was his primary place of residence when he is in Massachusetts. For example, video surveillance set up on January 6 observed Jones leaving his girlfriend's apartment every day until January 9. After which, data from Jones' cellphone indicated he was in New York, where he has family ties and regularly visits. Murphy, the co-defendant, also had access to the apartment to engage in drug trafficking. The apartment had many attributes of a stash house.

However, Jones had possession and control over the apartment. Jones said that he knew Crystal Croteau, the tenant in whose name the utilities are listed. He also said that Crystal paid the rent for the apartment, but that he would give the rent to the landlord when she wasn't there. Further, Jones had a key and ready access to the apartment and kept some clothing and a toothbrush there. Indeed, he was in his boxers when the police arrived. Jones occasionally slept at the Melville Street apartment and stated that he had stayed overnight the night before the search warrant was executed.

The defendant has failed to meet his burden of establishing that his status in the apartment justified a legitimate expectation of privacy. His primary residence in Massachusetts is his girlfriend's apartment, while the Melville Street apartment was the locus of the drug trafficking activity. Further, although Jones likens his status at Melville Street to that of a house guest, his relationship with the tenant is not crystal clear. Indeed there is no evidence this tenant, Crystal Croteau, ever lived there. While Jones may have spent some nights in the apartment, his primary activity was selling drugs, an illicit commercial function that society doesn't value. Therefore, the court finds that Jones has not met his burden of proving he has standing to challenge the results of the Melville Street search.

### B. Fourth Amendment

Even if Jones has met his burden of establishing a legitimate expectation of privacy, none of the legal arguments he advances warrants the suppression of evidence obtained during the January 24 search. Jones' primary argument is that the execution of the Melville Street warrant violated the Fourth Amendment because he was not shown the incorporated affidavit or the warrant during the search, and agents did not leave a copy of the affidavit at the apartment.

The Fourth Amendment requires that a warrant must "particularly" describe the "place to be searched, and the person or things to be seized." U.S. Const. Amend. IV. In *Groh v. Ramirez*, 540 U.S. 551, 561, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the Supreme Court held that a search was invalid under the Fourth Amendment's particularity requirement because the war-

rant did not particularly describe the items to be seized; it did not incorporate other documents by reference, nor did a letter, affidavit or application (which had been placed under seal) accompany the warrant. *Id.* at 558, 124 S.Ct. 1284. It explained:

> But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit *present at the search*), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.

*Id.* (emphasis added). The Supreme Court explained that "the purpose of the particularity requirement is not limited to the prevention of general searches" but includes "assur[ing] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* (citations and quotations omitted) (emphasis added). Defendant relies on this italicized language and the underlying rationale to assert that the Fourth Amendment gives him the right to see the particular items described in the warrant at the time of the search to inform him what items the police could seize. Several pre-*Groh* cases support this argument. *United States v. McGrew,* 122 F.3d 847, 849–50 (9th Cir.1997) (holding that "[t]he purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion *and to inform the person subject to the search what items the officers executing the warrant can seize.*") (internal citations and quotations omitted) (emphasis in original); *Bartholomew v. Com. of Pa.,* 221 F.3d 425, 428–29 (3d Cir.2000) (citing *McGrew,* 122 F.3d at 849–50) (holding that when a warrant's particularity depends upon incorporated documents, those documents must physically accompany the warrant at the search).

A subsequent case, *United States v. Grubbs,* 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006), further explored the purpose of the particularity requirement in another context. In *Grubbs,* the court held that the Fourth Amendment does not require that the triggering condition for an "anticipatory" search warrant be set forth in the warrant itself because it was not covered by the particularity provision. As such, the police need not provide the affidavit explaining the triggering condition at the time of the search. The Supreme Court stated that "the Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante,* the 'deliberate, impartial judgment of a judicial officer … between the citizen and the police,' and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages." *Id.* at 98–99, 126 S.Ct. 1494 (citations and quotation omitted). Of particular relevance to this case, the Supreme Court also held, "[N]either the Fourth Amendment nor Federal Rule of Criminal Procedure imposes the requirement that the executing officer must present the property owner with a copy of the warrant *before* conducting his search." *Id.* at 97, 126 S.Ct. 1494. (emphasis added). *Groh* and *Grubbs,* read together, seem to indicate that the purpose of the particularity requirement is not to permit monitoring of the police during the search, but they left open the question whether the affidavit incorporated into the warrant particularly stating the items to be seized had to be "present" at the time of the search to meet the particularity requirement of the Fourth Amendment. The extent to which *Groh* "seems to indicate that flowing from the Fourth Amendment's particularity requirement is some sort of right of the person at the search scene to learn about

the warrant's limitations" remains "largely undefined". *See* 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.12(a) (5th ed. 2012).

Two circuits have expressly grappled with this issue, holding that the Fourth Amendment's particularity provision does not require that defendant be shown the incorporated affidavit at the time of the search, and that the affidavit does not even have to be present. In *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 436 (6th Cir.2006), the Sixth Circuit held that a warrant was valid even though the supporting affidavit was under seal and not present during the search, reasoning that "[b]ecause the warrant described the items to be seized when the magistrate issued it, the warrant satisfied the particularity requirements of the Fourth Amendment." In *United States v. Hurwitz*, 459 F.3d 463, 471–73 (4th Cir.2006), the Fourth Circuit held that there is "nothing in the Constitution requiring that an officer possess or exhibit, at the time of the search, documents incorporated into a warrant as an additional safeguard for the particularity requirement," and that the Fourth Amendment is not violated when an officer "fails to leave a copy of the search warrant with the property owner following the search" or "fails even to carry the warrant during the search". *See also United States v. Cazares–Olivas*, 515 F.3d 726, 729 (7th Cir.2008) (holding that "the fourth amendment does not require officers to have a warrant in hand when searching.")

Another circuit has upheld a search where the attachment was present at the search and "available" to the defendant although he was not provided with a copy. *See United States v. Riesselman*, 646 F.3d 1072 (8th Cir.2011) *cert. denied,* —— U.S. ——, 132 S.Ct. 1065, 181 L.Ed.2d 780 (2012).

■ Here, the case falls into the crevices of the law. The police possessed the sealed affidavit incorporated into the warrant at the time of the search but did not show it to defendant even after he requested it. The warrant, together with the inventory, was left on the table. The affidavit was not. As a practical matter, providing the warrant to the defendant would not have made a difference because he was handcuffed and sitting on the floor during the search and could not monitor the police to determine whether the limits of the search warrant were being met. Moreover, the items specified in the affidavit are standard fare for a drug trafficking case. Therefore, given these circumstances, under *Groh* and *Grubbs,* the Court holds that there was no Fourth Amendment violation.

■ Moreover, even assuming that the failure to show Jones the warrant or serve him with a copy of the affidavit after the search was a violation of the Fourth Amendment, the violation would not justify suppression. *See, e.g., United States v. Hector,* 474 F.3d 1150, 1154 (9th Cir.2007) (holding that because "a valid search warrant entitled the officers to retrieve drugs and firearms in the apartment, '[r]esort to the massive remedy of suppressing evidence of guilt [was] unjustified' " where officers failed to serve defendant with a warrant) (quotation omitted). *See generally, Hudson v. Michigan,* 547 U.S. 586, 592, 595, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (holding that violation of knock-and-announce requirement did not warrant suppression of the evidence because "[w]hether [the violation] had occurred *or not,* the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house" and the suppression of the evidence would

not further the deterrence goal of the exclusionary rule). Regardless of whether the agents had shown Jones the warrant or affidavit, they would have still executed it and obtained the same results. There is no evidence that the agents exceeded the bounds of the search. Suppression in this case would be unwarranted.

### C. Federal Rule of Criminal Procedure 41

■ Jones also objects to the execution of the search as a violation of Fed. R.Crim.P. 41, because the warrant was not provided at the outset of the search. Rule 41 provides, "The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R.Crim.P. 41(f)(1)(C). Motions to suppress based on violations of Rule 41 "should be granted only when the defendant demonstrates legal prejudice" as these violations are "essentially ministerial in nature." *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir.1986) (holding that seized evidence did not merit suppression when search warrant was not in the agents' physical possession at the time of entry because defendants did not show prejudice). To show prejudice, defendants must show that they "were subjected to a search that might not have occurred or would not have been so abrasive had Rule 41 been followed." *Id. See also United States v. Scott*, 83 F.Supp.2d 187, 202 (D.Mass.2000) (declining to suppress evidence obtained in a search when officers refused a defendant's request for a copy of the arrest and search warrant and failed to leave a copy of the search warrant at his premises). With respect to this claim, defendant has standing since his property was taken. The agents' failure to leave Jones a copy of the warrant with the incorporated affidavit may constitute a violation of Rule 41, but Jones has not demonstrated legal prejudice.

### D. Probable Cause/Staleness

■ Defendant argues that the information in the warrant was stale by the time it was executed.[1] In this case, investigating agents observed continuous drug-related activity at the Melville Street apartment, including multiple controlled buys, over the course of their investigation beginning November 21, 2011. In her review of the application for the warrant, the Magistrate Judge authorized the search warrant to be valid until January 27, 2012. The First Circuit has "repeatedly recognized that drug operations, when sheltered in the darkness of relative obscurity, often germinate over a protracted period of time; thus, information that might otherwise appear stale may remain fresh and timely during the course of the operation's progression." *United States v. Tiem Trinh*, 665 F.3d 1, 14 (1st Cir.2011) (holding that information contained in a search warrant affidavit was not stale despite two-month lapse between early observations of drug activity and the issuance of the warrant). Given the nature of on-going drug distribution scheme and the observations of the agents over three months, the execution of the warrant on January 24, 2012 was not stale.

### E. Audio and Video Surveillance

Defendant argues that his Fourth Amendment rights were violated by the use of audio and video surveillance equipment. Although not clear from his brief, at oral argument Defense counsel seemed

---

1. Defendant does not challenge the warrant on the ground that it lacks probable cause.

to assert that during the course of the recorded drug transaction with the CW, the bag in which the equipment was located was placed in such a manner that it exceeded the view that the CW had, constituting a violation of the Defendant's Fourth Amendment rights. Defendant did not support this claim in an affidavit. The Court therefore dismisses this argument without prejudice.

### F. Authority of Fall River Emergency Services Unit to Execute the Warrant

Defendant also argues that the warrant was executed by unauthorized law enforcement agents in violation of 18 U.S.C. § 3105, which states, "A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution." It is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). Cooperation between state and federal agents is often appropriate in the execution of a search warrant. *See, e.g., United States v. Medlin*, 842 F.2d 1194, 1196–97 (10th Cir.1988) (holding that the state agent's cooperation in federal search was permissible where evidence showed state agent's "authority to search was derived from, and was no greater than, the authority extended to the ATF agents"). Agent Rideout testified that Fall River Emergency Services Unit ("ESU") was employed to help in executing the warrant. Although the ESU was primarily responsible for securing the premises, the DEA was responsible for directing the search. The Court finds that

this assistance by local law enforcement was consistent with § 3105.

### IV. ORDER

The Court *DENIES* Defendant's motion to suppress.