# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1161

_____

United States of America,

        Appellee,

v.

Paul Benjamin Riesselman,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Northern
\*   District of Iowa.
\*
\*
\*

_____

Submitted: June 17, 2011
Filed: July 22, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

BYE, Circuit Judge.

Paul Riesselman was charged with conspiracy to distribute methamphetamine, distribution of methamphetamine, being an unlawful user of methamphetamine in possession of firearms, and unlawfully possessing an unregistered sawed-off shotgun. Riesselman filed a motion to suppress certain evidence, which the district court[2]

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, adopting the report and recommendations of the Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

denied in part and granted in part. Riesselman appeals, arguing the district court erred in denying the suppression of physical evidence seized pursuant to a search warrant he alleges was invalid, as well as statements he made following an illegal search of his person. We affirm.

I.

In March 2008, a confidential informant provided information to Special Agent Todd Jones of the Iowa Division of Narcotics Enforcement ("DNE") indicating Riesselman possessed methamphetamine and weapons at his residence. Between March and June 2008, the informant continued to work with the DNE and met with Riesselman to discuss methamphetamine transactions. In May 2008, the informant purchased a small amount of methamphetamine from Riesselman.

In response to the information received from the informant, Jones contacted Special Agent Darin Heideman, a federally-certified task force officer, to assist in the preparation and signing of a federal search warrant for Riesselman's home in Vail, Iowa. Heideman prepared an affidavit and application for a search warrant, which was signed by a magistrate judge on July 3, 2008. The items sought were indicated by a reference to "Attachment 1," which included a list of documents, drug paraphernalia, weapons, and other items. The warrant did not authorize the search of any persons, only Riesselman's residence.

Prior to the execution of the search warrant, Heideman provided Jones with a copy of the search warrant, including Attachment 1, and the affidavit in support of the warrant application. On July 9, 2008, Jones and Heideman, along with other officers, executed the search warrant on Riesselman's property. There was no plan to arrest Riesselman, but during the search, officers detained him, searched him, and seized a small amount of methamphetamine found in his pocket. Officers also seized a cell phone found on his person.

Following the discovery of methamphetamine on Riesselman's person, Jones—who was not involved in the search of Riesselman's person—read Riesselman his Miranda rights, to which Riesselman replied he understood and was willing to speak with the officers. Jones then asked Heideman—who was also not involved in the search of Riesselman's person—to interview Riesselman inside his residence. As they walked inside, Riesselman asked Heideman whether he should have an attorney present. Heideman responded they were "just talking," but indicated he would inform the prosecutor if Riesselman cooperated with the questioning. When inside, Heideman again informed Riesselman of his rights, and Riesselman acknowledged he understood.

The interview began with only Heideman questioning Riesselman and with no recording. Heideman asked Riesselman about the drugs found in his pocket, his drug usage, his work history, and the weapons found at his residence. After approximately thirty to forty-five minutes, Jones joined the interview and recorded the remainder of the conversation. Jones also questioned Riesselman about his drug history and his drug transactions. Riesselman admitted to distributing about one pound of methamphetamine, using other drugs, and possessing firearms.

Following the interview and at the conclusion of the search, Jones and Heideman released Riesselman and provided him with a copy of the search warrant. However, the officers failed to provide Riesselman with Attachment 1 referenced in the search warrant. Jones returned Riesselman's cell phone, left a copy of the inventory on the kitchen table, and photographed both items to show they had been left.

Riesselman was charged with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 960(a); distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); being an unlawful user of methamphetamine in possession of firearms in violation of

18 U.S.C. §§ 922(g)(3) and 924(a)(2); and unlawfully possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871. Riesselman filed a motion to suppress the evidence of the drugs and cell phone found on him during the search of his person because the search was not authorized by the search warrant. Also, Riesselman sought to suppress other physical evidence seized pursuant to the warrant because the incorporated Attachment 1 did not accompany his copy of the search warrant after the search concluded. Finally, Riesselman sought to suppress the statements he made during the interview following the search of his person, alleging they were a product of the illegal search.

The motion was referred to the magistrate judge, who conducted two evidentiary hearings on the matter and filed a report, recommending Riesselman's motion be granted in part and denied in part. After Riesselman filed objections to the magistrate judge's report and recommendation, the district court reviewed de novo the magistrate judge's recommended disposition of Riesselman's motion. The district court adopted the magistrate judge's findings of fact and ultimately agreed with the recommendation, granting the motion as to the drugs and cell phone unlawfully seized from Riesselman, and denying the motion as to the fruits of the warrant and the statements obtained during the interview. With regard to the fruits of the search warrant, the district court determined the search warrant adequately referenced Attachment 1 and the attachment accompanied the search warrant, satisfying the Fourth Amendment's particularity requirement. With regard to Riesselman's statements made in the interview following the unlawful search of his person, the district court concluded Riesselman failed to prove the discovery of methamphetamine was the but-for cause of making his statements and the government successfully showed the statements were sufficiently attenuated by other circumstances to purge the taint of the unlawful search.

Following the district court's denial of the motion to suppress, Riesselman entered a conditional plea of guilty to conspiracy to distribute as well as unlawful

possession of an unregistered firearm and was sentenced to seventy-five months' imprisonment. Riesselman reserved the right to appeal all issues raised in his motion to suppress and he now raises two issues on appeal. First, he claims the district court erred in denying the suppression of all the fruits of the search warrant. Second, Riesselman claims the district court erred in denying suppression of his incriminating statements made after an unlawful search of his person.

## II.

We review the district court's legal conclusions for the denial of a motion to suppress de novo, but its factual findings for clear error. United States v. Vanover, 630 F.3d 1108, 1114 (8th Cir. 2011). "We 'will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" Id. (quoting United States v. Munoz, 590 F.3d 916, 920 (8th Cir. 2010)).

## A.

Riesselman first argues the district court improperly denied suppression of physical evidence obtained from the search warrant because the search warrant was not sufficiently particular when the officers failed to provide him with the referenced Attachment 1 at the conclusion of the search. As required by the Fourth Amendment, search warrants must particularly describe a place to be searched and things to be seized. See U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be search, and the persons or things to be seized."). Although a search warrant must be particular, adequate reference to an affidavit or attachment listing items to be searched or seized can satisfy the requirement. United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010).

The district court determined a clear incorporation of Attachment 1, including a full list of items subject to seizure, and the presence of Attachment 1 with the search warrant at the search scene satisfied the Fourth Amendment's particularity requirement. That the copy of Attachment 1 was not provided to Riesselman after the search concluded was of no consequence because a complete copy of the search warrant was present at the time of the search, limiting the items the officers could seize. Based on the facts, we agree the search warrant was sufficiently particular for several reasons.

First, the search warrant in this case indicated Attachment 1 in the space designated for items to be searched. Such a reference sufficiently incorporated the attachment. See United States v. Curry, 911 F.2d 72, 77 (8th Cir. 1990) (noting suitable words of incorporation include "see attached affidavit"); United States v. Johnson, 541 F.2d 1311, 1315 (8th Cir. 1976) (per curiam) (holding "U. S. currency as described in the affidavit" was a suitable way of incorporating the affidavit).

Second, the record supports the finding that the officers brought the attachment to the scene of the search. Although it is not entirely clear whether a referenced attachment is required to accompany a search warrant from its issuance to the conclusion of the search, compare Curry, 911 F.2d at 77 n.4 (stating "the affidavit must both accompany the warrant and be incorporated into it" but failing to provide any indication of when these events must occur), with Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987) (stating "[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant"), we are convinced the search warrant in the case before us was sufficiently particular because the attachment was present at the scene of the search. Rickert, 813 F.2d at 909 ("Sufficient particularity may . . . be provided even if the affidavit is merely present at the search."); see also Groh v. Ramirez, 540 U.S. 551, 560 (2004) (an individual is protected if "the particular items described in the affidavit are . . . at least incorporated by reference, and the affidavit [is] present at the search"). The presence

-6-

of the attachment indicated it was available for Riesselman and other parties to observe at the time of the search. See Johnson, 541 F.2d at 1316. Additionally, its presence limited the scope of the search to the items listed in the attachment. Id. ("[T]he affidavit . . . removes any doubt as to . . . the presence of adequate limitations on the executing officers' discretion which otherwise might have been raised.").

Based on the absence of the attachment from the copy of the warrant he received, Riesselman argues suppression is warranted because he was not provided with the knowledge of what items were to be seized, nor was he ensured the search was lawfully authorized and conducted. We are not persuaded by this argument. Here, the referenced attachment accompanied the warrant application, and was reviewed by the magistrate judge when the warrant was issued. Riesselman does not contest the validity of the warrant at the time it was issued. We recognize Riesselman's concern as to the search possibly exceeding the scope of the warrant if he is not privy to the list of items to be seized; however, we conclude a validly issued search warrant adequately referencing an attachment and the availability of the attachment at the scene of the search prevent the type of impermissible officer conduct Riesselman is concerned about because items seized beyond the purview of the warrant are subject to suppression. See Baranski v. United States, 515 F.3d 857, 860-61 (8th Cir. 2008) (holding the search warrant satisfied the particularity requirement because a magistrate approved the search with reference to the incorporated affidavit and had an opportunity to limit the scope of the search, and no constitutional violation occurred because the officers performed the search reasonably according to the warrant's limits).

Therefore, we hold the district court properly found the warrant to be sufficiently particular despite the failure to provide the attachment to Riesselman at the conclusion of the search.

B.

Having rejected Riesselman's Fourth Amendment challenge, we turn to his argument contending the fruits of the search should nevertheless be suppressed under Federal Rule of Criminal Procedure 41(f)(1)(C).  The rule states, "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."  Fed. R. Crim. P. 41(f)(1)(C).  As the district court found, Attachment 1 was not included with the search warrant copy given to Riesselman and, thus, we agree the officers failed to "give a copy of the warrant" to Riesselman at the conclusion of the search in violation of the Rule.

However, even if Rule 41 is violated, exclusion of evidence acquired during the search "is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident."  United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (citing United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994)).  Riesselman failed to show the withholding of Attachment 1 prejudiced him because the officers provided him with an inventory of the items seized when they left his residence.  See id. (holding defendant "did not suffer any prejudice" merely because officers failed to provide him with an attachment listing property to be seized).  Riesselman also failed to show the violation was reckless because the record indicates a full copy of the search warrant was available at the search, and although mistaken, the officer thought he had provided Riesselman with all the papers in his possession.  As a result, the district court properly denied suppression of evidence seized pursuant to the search warrant in spite of the failure to provide the attachment to Riesselman.

III.

Riesselman also challenges the district court's unwillingness to suppress statements he made subsequent to an unlawful search of his person. Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, "cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Calandra, 414 U.S. 338, 347 (1974). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 804 (1984) (citations omitted). Additionally, "[v]erbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." United States v. Yousif, 308 F.3d 820, 832 (8th Cir. 2002) (citing Wong Sun v. United States, 371 U.S. 471, 485 (1963)).

However, the evidence should only be excluded if the "illegality is at least a but-for cause of obtaining the evidence." United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007). In order to determine whether challenged evidence is the fruit of an illegal search or seizure, "the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." United States v. Marasco, 487 F.3d 543, 547 (8th Cir. 2007). Once the defendant comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government. Alderman v. United States, 394 U.S. 165, 183 (1969). In other words, the government must show the evidence obtained after the illegal search was not "come at by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488.

A.

In Riesselman's case, the prosecution conceded the pat-down search was neither authorized by the search warrant nor reasonable under the circumstances. Thus, the search of Riesselman's person violated his Fourth Amendment right against unreasonable searches and seizures, and any evidence stemming from the search may be excluded as "fruits" so long as Riesselman is able to first prove a "factual nexus between the constitutional violation and the challenged evidence." Marasco, 487 U.S. at 547.

Riesselman contends his statements were made as a direct result of the officers' discovery of the drugs on his person. Moreover, he argues the district court improperly relied in part on the officers' motivation for questioning him in its analysis. We agree with Riesselman's latter assertion regarding the district court's focus on the officers' motivation because the proper inquiry focuses on whether Riesselman would have made the statements to the officers if the officers had not illegally searched and seized drugs from his person. See Wong Sun, 371 U.S. at 486 (focusing on whether statements were "an act of free will" following an illegal search). However, despite the district court's initial error in phrasing, it later applied the correct analysis by stating Riesselman offered no convincing evidence to show he was influenced by the finding of drugs on his person to make incriminating statements to the officers. We agree with the district court's conclusion.

Particularly, the district court noted Riesselman offered no other evidence beyond his own testimony that he would not have spoken to the officers if the drugs had not been discovered. The district court rejected Riesselman's testimony, agreeing with the magistrate judge that the statement was "self-serving" and "smacks of recent invention" as Riesselman did not make such an assertion until after the magistrate judge found "if Riesselman had testified that he was so fearful or otherwise swayed by emotion at the discovery of the drugs in his pocket that he was motivated to speak

-10-

to the officers, then a different result might be warranted." Furthermore, the district court determined the officers questioned Riesselman about drug transactions with the confidential informant and weapons found at his residence rather than solely about the drugs found on his person. Based on the district court's findings and the entire record, we agree Riesselman failed the but-for test because he did not provide sufficient evidence to prove a nexus between the illegal search of his person and his statements made to the officers. Therefore, we hold the district court did not err in denying suppression of the statements made after the illegal search of Riesselman's person.

B.

Even if Riesselman was correct and the district court did err in finding no nexus between the illegal search of his person and his statements made thereafter, we nevertheless uphold the district court's decision because the government successfully showed the statements were sufficiently attenuated from the illegal search such that the statements were voluntarily provided by Riesselman.

As previously stated, once the defendant comes forward with specific evidence demonstrating taint, the government has the ultimate burden of persuasion to show the evidence is not tainted. Alderman, 394 U.S. at 183. Evidence showing statements after an illegal search were voluntary is a means of demonstrating the evidence is attenuated from the taint. See United States v. Vega-Rico, 417 F.3d 976, 979 (8th Cir. 2005). In order to determine whether statements provided are voluntary to purge the taint of the illegal search, we must consider the giving of Miranda warnings, the "temporal proximity" of the illegal search and the statements made, the "presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." United States v. Lakoskey, 462 F.3d 965, 975 (8th Cir. 2006).

Three of these four factors indicate Riesselman's statements were voluntary. First, Riesselman received Miranda warnings twice: the first from Jones after the

illegal discovery of methamphetamine on his person, and the second from Heideman before questioning began. Riesselman acknowledged his rights by signing a form in the presence on Heideman. These events occurred before the statements were made but after the illegal search and thus they tend to indicate the voluntariness of Riesselman's statements. See Rawlings v. Kentucky, 448 U.S. 98, 107 (1980) (stating the giving of Miranda warnings is an "important, although not dispositive" factor).

Second, several intervening circumstances occurred in the admittedly short time between the illegal search and the statements, making it more probable the statements were a product of Riesselman's free will rather than of the illegal search. To start with, there was a change of location. After an officer found drugs on Riesselman's person, Heideman alone escorted Riesselman indoors. See Vega-Rico, 417 F.3d at 980 (finding it significant that interview was conducted in different location). Then, even though Riesselman was detained, Heideman indicated to Riesselman that they were "just talking," and he was never formally placed under arrest. See Rawlings, 448 U.S. at 108 ("congenial" discussion with officers during illegal detention led to petitioner's confession). Inside his residence, Riesselman made the statements to Heideman and Jones, neither of whom made the initial illegal seizure of the drugs from his person. See Vega-Rico, 417 F.3d at 980 (discussing the relevance of another officer, who was not involved in the initial Fourth Amendment violation, conducting the interview). We conclude such intervening circumstances tend to show Riesselman understood his choice to speak with the officers was voluntary.[3]

---

[3]The only contrary evidence presented was Riesselman's testimony regarding his feeling of being compelled to speak because the drugs were found in his pocket. However, the district court found his testimony not credible. See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) ("[C]redibility determinations [by the district court] are virtually unreviewable on appeal.") (internal quotation marks and citations omitted). We provide deference to the district court's factual findings, see Vanover, 630 F.3d at 1114 (facts are reviewed for clear error), and the district court was correct in determining Riesselman's statements were voluntary.

Third, as to "the purpose and flagrancy of the official misconduct," no evidence indicates the search of Riesselman's person was conducted in bad faith. Although the officers had a copy of the search warrant, which did not authorize a search of Riesselman's person, the officers had a valid search warrant for other purposes. Also, as the district court determined, the officers did not focus their questioning on the discovery of drugs on his person but rather on drug transactions and weapons generally, and the record supports the finding that the officers already planned, before finding the drugs on his person, to interview Riesselman the day of the search. Contra Brown v. Illinois, 422 U.S. 590, 605 (1975) (excluding fruits of the illegal arrest where police had flagrant purpose when they "embarked upon [the] expedition for evidence in the hope that something might turn up"). Thus, with no flagrant misconduct, there are sufficient indications that the statements were voluntary.

The only factor to the contrary is the "temporal proximity" of the illegal search and the statements made. This factor weighs less in favor of finding the statements were voluntary because Riesselman made the incriminating statements shortly following the illegal search of his person. See Lakoskey, 462 F.3d at 975 (holding voluntary consent did not "right the officers' constitutional wrong" as the consent was made "on the heels of the illegal entry"). However, about fifteen to twenty minutes passed between the illegal search of Riesselman's person and the start of the interview. Considering this time span along with the intervening circumstances and double Miranda warnings, we do not find this factor undermines the voluntariness of Riesselman's statements. See Rawlings, 448 U.S. at 108 (holding that while only forty-five minutes passed between the illegal detention and challenged statements, the conditions were not strict, which outweighed the short time period). Even more, we find relevant the fact of Riesselman's statements occurring in close temporal proximity to the lawful search of his residence. See United States v. Becker, 333 F.3d 858, 862 (8th Cir. 2003) (finding consent not too close in proximity to an unlawful detention when it was preceded by a lawful detention).

Based on the analysis of the factors listed above, we are convinced the government was able to show that the statements were acquired by means sufficiently distinguishable from the illegal search of Riesselman's person and Riesselman voluntarily provided his incriminating statements. See Wong Sun, 371 U.S. at 488. As such, we hold the district court properly denied suppression of the statements Riesselman made following the unlawful search of his person.

IV.

We affirm the district court's decision to grant in part and deny in part Riesselman's motion to suppress.

_____