# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1109

_____

United States of America

*Plaintiff - Appellant*

v.

Dennis Neil Yorgensen

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: September 23, 2016
Filed: January 12, 2017

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Charged with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, Dennis Yorgensen moved to suppress all evidence obtained as a result of a warrant search of his home, claiming there were false material statements and omissions in the warrant application and requesting a hearing under Franks v. Delaware, 438 U.S. 154 (1978). After an evidentiary hearing, the district court granted the motion,

suppressing physical evidence seized during the search and post-arrest statements Yorgensen made two days later to an officer from a different law enforcement agency. In this interlocutory appeal, see 18 U.S.C. § 3731, the government argues that the district court erred in suppressing the post-arrest statements. We agree and therefore reverse this portion of the suppression ruling.

## I. Factual Background.

At 10:46 p.m. on March 21, 2015, Sac County Deputy Sheriff Jonathan Meyer responded to a noise complaint at unit four of a small apartment complex in Odebolt, Iowa. Meyer parked in an alley on the far side of the complex and approached unit four on foot. He saw a man, later identified as Yorgensen, walk with his dog from in front of unit four to the door, open the door, and tell those inside not to come out as the police were there. Yorgensen quickly shut the door and walked toward Meyer. They met some twenty to twenty-seven feet away from the residence, and Meyer informed Yorgensen of the noise complaint. Yorgensen said his brother was in town, and they were playing music. As the two men talked, Deputy Kristan Erskine arrived as Meyer's backup and stood nearby. Yorgensen agreed to keep the noise down, and the cordial encounter ended in five or ten minutes.

As the officers were leaving, Meyer told Erskine he had smelled the odor of marijuana. Erskine said she had not. The two deputies drove separately to the Odebolt Fire Department, where Erskine called their superior officer, Captain Brian Erritt. She explained that Meyer had smelled marijuana during the call but Erskine had not and asked if Erritt believed that was enough probable cause for a search warrant. Erritt instructed the officers to apply for a warrant to search unit four.

Erskine and Meyer then drafted an application for a warrant to search unit four for "Drug Paraphernalia, Controlled Substances (marijuana/methamphetamine) and any large amounts of currency located therein." The application included a probable

cause affidavit signed by Meyer. The affidavit recited that Meyer had been a full time police officer since September 2008 and knew what marijuana smells like from participating in drug investigations and seizures. Meyer then averred:

> I arrived on scene at approximately 2246hrs. When pulling up to this apartment complex I observed a male subject standing outside with his dog. When I exited my squad car I observed the male subject enter the residence and re-exit the residence closing the front door. *When making contact with the male subject who was identified as Dennis Yorgensen, I could smell a strong odor of marijuana come from inside the residence and off Mr. Yorgensen.*
>
> The Sac County Sheriff's Office has had several complaints of a lot of traffic coming and going from this apartment complex. The Sac County Sheriff's Office has also . . . had a father call in and advise that his daughter was smoking methamphetamine with Dennis that lives at [the complex]. There was an incident back in January w[h]ere Jordan Brunning did an home invasion on this residence for drug reasons.
>
> Dennis Yorgensen . . . rents apartment #4.
>
> Mr. Yorgensen has previous history of trafficking illegal drugs and possession of controlled substances.

The italicized sentence was the primary focus of Yorgensen's motion to suppress evidence obtained during and after the warrant search.

A Sac County Magistrate Judge issued the warrant at 1:48 a.m. on March 22. Erritt, Meyer, Erskine, and another deputy executed the warrant at 3:30 a.m. that morning. They read the warrant to Yorgensen, and he then showed them where they would find marijuana and methamphetamine paraphernalia. Methamphetamine, marijuana, drug paraphernalia, and more than $2700 in cash were discovered during the search. Yorgensen was arrested and detained at the Sac County Jail.

-3-

On March 24, Captain Erritt called Special Agent Robert Jones of the Iowa Division of Narcotics Enforcement ("DNE"), who was working on a federal drug trafficking investigation in which Yorgensen was a "person of interest." Erritt asked if Jones wanted to interview Yorgensen. Jones declined. Later that day, Erritt called Jones again and said that Yorgensen had asked to speak with Jones. Jones went to the Sac County Jail and interviewed Yorgensen, who expressly waived his Miranda rights after making ambiguous statements about whether he needed a lawyer. In the lengthy video-recorded interview, Yorgensen questioned Jones about the federal investigation, naming individuals Yorgensen believed had been talking to Jones. Jones advised Yorgensen, "I'm going to be seeking a federal indictment on you" for methamphetamine distribution and conspiracy, and called the case a "slam dunk." Yorgensen agreed, considering "what just happened." His incriminating statements are the subject of this appeal.

## II. The Suppression Proceedings.

Following his indictment, Yorgensen moved to suppress the evidence seized during the warrant search of unit four and all evidence derived from that unlawful search, including his statements to Special Agent Jones. He requested a Franks hearing, arguing that Meyer's affidavit supporting the warrant application contained deliberately false or recklessly untrue statements and omissions. Under Franks,

> if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with that reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must set aside those statements and then review the remaining portions of the affidavits to see if what remains is sufficient to establish probable cause.

United States v. Ozar, 50 F.3d 1440, 1443 (8th Cir.) (quotation omitted), cert. denied, 516 U.S. 871 (1995). At the hearing, Meyer, Erskine, and Jones testified. Yorgensen

-4-

did not testify but submitted substantial evidence that Meyer, standing some twenty-five feet from the front door of unit four, could not have smelled marijuana coming "from inside the residence" after Yorgensen closed the door, given the wind and weather conditions that night.

The magistrate judge found that, while "Meyer smelled marijuana from some source . . . the evidence does not support Meyer's statement in the affidavit that he was able to detect that smell from two different sources," the "briefly-opened apartment door" and Yorgensen's person when they came in contact. Accordingly, the highly material, above-italicized sentence in Meyer's affidavit "was untrue" and was made with reckless disregard for the truth, making the warrant invalid and requiring suppression of all evidence obtained directly or indirectly from the warrant. The district court overruled the government's objections and accepted these findings and conclusions, which the government does not challenge on appeal.[1]

---

[1]We accept but do not endorse the district court's Franks ruling for purposes of this appeal. Meyer testified that he first smelled marijuana "when [Yorgensen] had shut the door and he was walking toward me," that the odor was stronger "when he was at the residence," and that the odor dissipated "as we stood out there and talked." A warrant affidavit is made with reckless disregard for the truth only if, "viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements." United States v. Finley, 612 F.3d 998, 1002 (8th Cir.) (quotation omitted), cert. denied, 562 U.S. 1020 (2010). Here, the material probable cause issue was whether Meyer had reason to believe the noisy occupants of unit four were using marijuana *in the apartment*. After Meyer credibly testified that he smelled marijuana, Yorgensen's *ex post* evidence that it was unlikely Meyer detected odor *from the residence* was hardly a showing of reckless disregard for the truth of his probable cause showing. See United States v. Mueller, 902 F.2d 336, 343 (5th Cir. 1990). The district court excised the entire sentence, when the only false statement was that odor was coming "from the residence," and ignored, for probable cause purposes, whether the dissipating odor on Yorgensen's person created a reasonable inference he was using marijuana in unit four. Thus, the district court's Franks ruling should be given no precedential weight in future cases.

-5-

Turning to Yorgensen's incriminating statements to Special Agent Jones two days after the warrant search and arrest, the magistrate judge suppressed the statements, concluding they were not admissible under the "attenuation" doctrine of Brown v. Illinois, 422 U.S. 590 (1975), because (i) Yorgensen's arrest as well as the search warrant was unlawful; (ii) the taint of this unlawful conduct did not dissipate during Yorgensen's two days of post-arrest custody; (iii) there were no relevant intervening circumstances; and (iv) Meyer's reckless disregard for the truth in his warrant affidavit was flagrant misconduct. The district court accepted this analysis and suppressed the statements as well as physical evidence seized during the warrant search. The government appeals the suppression of Yorgensen's statements to Agent Jones. We review *de novo* whether statements obtained through a causal chain that began with a Fourth Amendment violation should be suppressed as indirect fruit of that illegality. United States v. Simpson, 439 F.3d 490, 495 (8th Cir. 2006).[2]

## III. Discussion.

The exclusionary rule applies to statements that result from a Fourth Amendment violation, but a statement is not "fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of police." Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). The question is whether police obtained the statement "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488 (quotation omitted). "[E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." Hudson v. Michigan, 547 U.S. 586, 592 (2006).

---

[2]The district court rejected Yorgensen's alternative contention that his statements to Agent Jones should be suppressed because they were made after he invoked his right to counsel. Yorgensen did not cross appeal that ruling.

**A.**

The first question is whether there was a sufficient "factual nexus between the constitutional violation" -- Meyer's recklessly untrue warrant affidavit -- "and the challenged evidence" -- Yorgensen's statements to Agent Jones two days later. United States v. Riesselman, 646 F.3d 1072, 1079 (8th Cir. 2011), cert. denied, 132 S. Ct. 1065 (2012). The affidavit resulted in a warrant search that discovered evidence of drug trafficking, resulting in Yorgensen's arrest. There would be no factual nexus if he was in custody when interviewed by Agent Jones because the officers had probable cause to arrest him before entering his home, regardless whether Meyer's affidavit contained an untrue statement in presenting facts which, if accurately described, would have provided the magistrate with probable cause to issue a warrant.

This chain of events is different from, but obviously analogous to, the decision in New York v. Harris, 495 U.S. 14, 21 (1990), where the Court held that, "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton [v. New York, 445 U.S. 573 (1980)]." In Harris, the Court declined to apply the attenuation analysis in Brown, where there was no probable cause to search or arrest. Instead, the Court ruled that "[n]othing in the reasoning of [Payton] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house." Harris, 495 U.S. at 18.

The district court committed plain error in not considering whether this principle applies and eliminates any factual nexus between Meyer's faulty warrant affidavit and Yorgensen's statements to Agent Jones. Yorgensen's brief on appeal cited Payton but failed to cite any case where the exclusionary rule has been applied

-7-

to statements made following an arrest based upon probable cause obtained in executing a facially valid search warrant subsequently invalidated after a Franks hearing. See United States v. Ladum, 141 F.3d 1328, 1336-37 (9th Cir.), cert. denied, 525 U.S. 1021 (1998); Lingo v. City of Salem, 832 F.3d 953, 960 (9th Cir. 2016) ("nothing within the fruit-of-the-poisonous-tree doctrine suggests that an officer must ignore facts that would give him probable cause to arrest a person merely because those facts were procured through an unlawful search").

**B.**

The second question is whether the attenuation doctrine applies. In Brown v. Illinois, the Supreme Court discussed and applied an exception to the exclusionary rule called "the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016). In Brown, the Court held that, to determine whether the causal connection between incriminating statements and an arrest or search that violated the Fourth Amendment has been broken, Miranda warnings -- which protect Fifth Amendment rights -- are relevant but other factors must be considered -- the "temporal proximity" of the unconstitutional conduct and the statements, the "presence of intervening circumstances," and "particularly, the purpose and flagrancy of the official misconduct." 422 U.S. at 603-04; see Riesselman, 646 F.3d at 1080. Here, we conclude that all four factors weigh in favor of not suppressing statements Yorgensen made during Special Agent Jones's March 24 interview.

**1. Miranda Warnings.** At the start of the interview, Yorgensen was eager to elicit information from Agent Jones about the federal investigation. But Jones carefully gave Yorgensen Miranda warnings before continuing the discussion, and Yorgensen signed a written waiver of his rights. Providing Miranda warnings is an "important, although not dispositive," factor that weighs against suppression of

-8-

Yorgensen's subsequent statements. Rawlings v. Kentucky, 448 U.S. 98, 107 (1980). "[P]ersons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality." Id. at 106, quoting Brown, 422 U.S. at 603.

**2. Temporal Proximity.**  More than two days passed between Yorgensen's arrest and his interview with Agent Jones.  The district court erred in concluding this period weighed against attenuation because Yorgensen spent the two days in custody. See United States v. Hernandez-Hernandez, 384 F.3d 562, 565 (8th Cir. 2004) (defendant who spent five days in unlawful detention before his confession had "plenty of time to contemplate his situation and reconsider his decision to confess"); accord United States v. Vega-Rico, 417 F.3d 976, 980 (8th Cir. 2005) (four days), cert. denied, 547 U.S. 1073 (2006).  These decisions are especially relevant here -- Yorgensen was in custody because substantial evidence of drug trafficking was found in a facially valid warrant search of his home; Yorgensen knew he was a suspect in a pre-existing federal investigation that Jones was conducting; and Jones testified without contradiction that he was told by Erritt that Yorgensen had asked to be interviewed.  This factor does not weigh in favor of suppression.

**3. Intervening Circumstances.**  Several intervening circumstances weigh against suppression. First, Yorgensen spoke with an "agent from a separate law enforcement agency, and neither agent nor agency had any involvement in the initial Fourth Amendment violation."  Vega-Rico, 417 F.3d at 980; see Hernandez-Hernandez, 384 F.3d at 566.  Agent Jones, who had nothing to do with the invalid warrant search and Yorgensen's arrest, told Yorgensen, "I'm going to be seeking a federal indictment on you." This gave Yorgensen "opportunities to pause and reflect, to decline consent after deliberate consideration if [he] wished." United States v. Brandwein, 796 F.3d 980, 986 (8th Cir. 2015) (quotation omitted), cert. denied, 136 S. Ct. 1214 (2016).  Though Erritt was present during the interview, he had authorized the warrant application but had not reviewed Deputy Meyer's inaccurate warrant affidavit.

The interview video confirms that Yorgensen understood the difference between the federal investigation and the warrant search of his home. At the outset of the discussion, Yorgensen demanded to know about the possible federal charges. Jones and Yorgensen then focused almost the entire discussion on the federal investigation. At one point, Yorgensen refused to give Jones the name of the person who supplied the methamphetamine seized during the warrant search, explaining, "I'm not going to give you a person's name who's not in this thing, who doesn't have anything to do with it really. . . . If that was pertinent, I would tell ya." As in Rawlings, the two-sided nature of the interview "weighs heavily in favor of a finding that [Yorgensen] acted of free will unaffected by the initial illegality." 448 U.S. at 108, quoting Brown, 422 U.S. at 603.

**4. Purpose and Flagrancy of Misconduct.** "The Supreme Court places a particular emphasis on any 'purpose and flagrancy of the official misconduct' in effecting the initial illegal entry." Brandwein, 796 F.3d at 985, quoting Brown, 422 U.S. at 603-04. "Application of the exclusionary rule . . . does not serve [its] deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights." United States v. Simpson, 439 F.3d 490, 496 (8th Cir. 2006) (quotation omitted). "An unreasonable mistake alone is not sufficient to establish flagrant misconduct." United States v. Herrera-Gonzalez, 474 F.3d 1105, 1113 (8th Cir. 2007); see Strieff, 136 S. Ct. at 2063.

In this case, the only misconduct was Meyer drafting a probable cause affidavit that included one untrue statement -- that he had smelled marijuana odor coming directly from unit four, rather than smelling a dissipating odor of marijuana on or around Yorgensen that he reasonably inferred came from unit four. The district court found that the error was unintentional. There was no evidence Meyer knew his affidavit was constitutionally inadequate; indeed, his testimony was firmly to the contrary. The magistrate judge noted that Meyer "had little experience in preparing

-10-

search warrant applications," but that does not support a finding of purposeful or flagrant misconduct. We reject the district court's conclusion that, because Meyer was guilty of a recklessly untrue statement, his misconduct was "purposeful or flagrant." See Strieff, 136 S. Ct. at 2064 ("For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure.").

In Brown, police acknowledged that they broke into Brown's apartment and arrested him without probable cause for the purpose of investigating the murder to which he later confessed. The "impropriety of the arrest was obvious" because officers arrested Brown for questioning in a manner "calculated to cause surprise, fright, and confusion." 422 U.S. at 605. Similarly, in Taylor v. Alabama, 457 U.S. 687, 691 (1982), a post-arrest confession was suppressed because "[p]etitioner was arrested without probable cause in the hope that something would turn up, and he confessed shortly thereafter without any meaningful intervening event." Though obtaining a search warrant is investigative conduct, Deputy Meyer's unintentional error in describing for an issuing magistrate what Meyer believed to be probable cause is a far cry from the purposeful and flagrant misconduct that weighed in favor of suppression in Brown and its progeny.

For the foregoing reasons, that portion of the district court's Order dated December 7, 2015 suppressing Yorgensen's post-arrest statements is reversed. The case is remanded for further proceedings not inconsistent with this opinion.

———————————————