# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3601
_____

United States of America,

*Plaintiff - Appellee,*

v.

Kra Deangelo Brooks, (originally named Kra Brooks),

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: September 24, 2021
Filed: January 6, 2022
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Investigators obtained a warrant to search Kra Brooks's home and uncovered evidence of drug trafficking. Brooks argues that the affidavit in support of the warrant included information that resulted from a violation of his Fourth Amendment rights. He contends that once that information is redacted, the remaining material is

insufficient to establish probable cause for the search. The district court[1] agreed that some portions of the affidavit should have been redacted, but concluded that the remainder established probable cause, and that evidence seized under the warrant thus should not be excluded. Brooks entered a conditional guilty plea, and appeals the order denying his motion to suppress evidence. We conclude that evidence seized under the warrant should not be excluded, and therefore affirm.

I.

On the morning of January 23, 2017, Brooks arrived at a checkpoint operated by the Transportation Security Administration at the Clinton National Airport in Little Rock, Arkansas. He intended to board a flight bound for California. As Brooks's carry-on bag passed through the x-ray machine, a TSA agent noticed a "large organic mass" inside.

To evaluate a possible threat, the agent escorted Brooks and his bag to a secondary screening area. Inside the bag, the agent found a pair of large manilla envelopes labeled "Legal Documents." He opened the envelopes and discovered what turned out to be $112,230 of cash that was vacuum-sealed and rubber-banded together in separate bundles. Consistent with TSA policy, the agent contacted his supervisor.

At 7:36 a.m., two police officers were dispatched to the TSA screening area. An airport dispatcher informed the officers that the TSA had discovered "bulk cash." When the officers arrived, TSA agents showed them Brooks's bag, which was sitting open on the screening-area desk. A police officer testified that the envelopes inside the bag also were open and that he "could see all the cash was vacuum-packed." The officer found the manner of packaging suspicious.

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

The police officer contacted detectives from the police department to suggest further investigation of Brooks. Shortly before 8:00 a.m., he asked Brooks to accompany him to the security office inside the airport. Brooks agreed to do so.

Roughly 15 minutes later, two detectives, Hudson and Flannery, arrived and began to question Brooks about the currency. Brooks claimed that the cash came from a two-year-old legal settlement and from his personal earnings. During the meeting, Brooks turned over another $4,115 in cash from his front pocket and a hydrocodone pill from a canister tied around his waist. The detectives also found two bottles of "promethazine with codeine" in Brooks's personal belongings. The detectives then placed Brooks's suitcase alongside several other suitcases in the hallway outside the office. Detective Hudson walked his drug-sniffing dog alongside the luggage. When the dog alerted to Brooks's suitcase, Hudson opened it. The interior smelled strongly of marijuana, but Hudson did not find any narcotics. The detectives arrested Brooks for possession of hydrocodone and promethazine without a valid prescription.

Another officer transported Brooks to the police department's Northwest Division office, about 12 miles away from the airport. They arrived at around 9:00 a.m. An hour later, Detective Flannery for the first time advised Brooks of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Brooks waived his rights and agreed to answer questions. Brooks suggests that the post-*Miranda* interview began a few minutes after 9:00 a.m., but the district court found without clear error that Brooks's post-*Miranda* statements came "at least an hour" after he was arrested and after he signed the waiver form at 10:00 a.m. R. Doc. 70, at 14; *see* R. Doc. 63, at 142.

Brooks was then interviewed by Hudson, Flannery, and two special agents from the Department of Homeland Security. During the conversation, Brooks admitted that he structured large cash withdrawals from various branches of Bank of America in an effort to avoid currency reporting requirements.

A month after the airport incident, a special agent from the Drug Enforcement Administration applied for a warrant to search Brooks's residence for evidence of drug trafficking. In his affidavit supporting the warrant, the agent focused on three sources of information.

First, the affidavit detailed Brooks's connections to Roderick Smart, a known drug trafficker. Smart relied on a California-based network to supply marijuana to central Arkansas. Smart's bank accounts had been closed after a drug investigation at his residence, but his girlfriend maintained an account at Bank of America. A bank representative informed agents that he began to notice suspicious activities involving the girlfriend's account after Smart's accounts were closed. The banker said that four men, one of whom was later identified as Brooks, made deposits of $20 bills that smelled like "marijuana, cheap perfume, or baby powder" into the girlfriend's account. Sometime later, Brooks entered the same bank carrying a backpack filled with currency and asked to exchange $20 bills for $100 bills. When an employee asked for identification, Brooks became agitated and departed. On other occasions, Brooks purchased cashier's checks payable to Smart's business. He also made cash deposits into bank accounts belonging to others in California and elsewhere.

Second, the affidavit described the airport incident and the evidence obtained by the detectives who interviewed Brooks. This discussion explained that Brooks was carrying large amounts of cash in vacuum-sealed bags and offered no plausible explanation for the source of the funds. The affidavit further stated that a drug-sniffing canine had alerted to Brooks's bag at the airport, that Brooks had been arrested at the airport for possession of hydrocodone and promethazine without a valid prescription, and that Brooks had admitted to structuring cash transactions.

Third, the affidavit recounted an earlier episode involving Brooks at the Little Rock airport. On November 6, 2016, a man arrived at the Southwest Airlines baggage claim and asked to claim luggage for Julie Harrison. Harrison was a

-4-

suspected drug smuggler; she was banned from doing business with Southwest after she repeatedly purchased tickets in California, checked luggage, and then left the airport without boarding a flight. Through this method, Harrison successfully sent luggage to other parties across the United States. In November 2016, when a Southwest employee asked to see the man's identification, he refused to provide it. The man then walked over to the baggage conveyor belt, grabbed two bags, and ran out of the airport. After the January 2017 airport incident, DEA agents reviewed Little Rock airport records and identified Brooks as the man who took the bags sent by Harrison in November 2016.

A judge issued a search warrant for Brooks's residence on February 15, 2017. The ensuing search discovered $168,832 in cash, two firearms, ammunition, a pound of marijuana, and six heat-sealed bags with marijuana residue.

Brooks filed two motions to suppress. In one motion, he argued that the officers lacked reasonable suspicion to detain him at the airport after the discovery of the money. As a result, he asserted, any evidence obtained after that detention was unlawfully obtained and could not serve as the basis for issuing a later warrant. In the other, he alleged that his statements at the airport were made while he was in custody and without the benefit of *Miranda* warnings. He maintained that his statements to police, both before and after receiving *Miranda* warnings, were also fruit of his unlawful detention. Brooks urged that after the disputed evidence was redacted from the affidavit in support of the warrant, the remaining information did not establish probable cause for a search.

The district court granted the motions in part. The court concluded that Brooks's detention at the airport was an unlawful seizure. Accordingly, the court excised from the affidavit any information concerning (1) Brooks's pre-*Miranda* warning statements to the detectives, (2) the positive canine alert to Brooks's bag, and (3) the prescription drugs seized from Brooks. But the court concluded that Brooks's

post-*Miranda* warning statements at the Little Rock police station were properly included because they were sufficiently attenuated from the unlawful seizure at the airport. The court also did not redact any information about the discovery of the vacuum-sealed currency itself, because it was discovered during a valid administrative search by the TSA. Finally, the court concluded that after redacting the tainted information, the remaining facts in the affidavit established probable cause for the search of Brooks's residence, so the evidence seized from the home was admissible.

Based on evidence seized at his home, Brooks entered a conditional guilty plea to one count of possession of a firearm in furtherance of drug trafficking, reserving the right to appeal the district court's order on the motions to suppress. *See* Fed. R. Crim. P. 11(a)(2). We review the district court's factual findings for clear error and its legal determinations *de novo*. *United States v. Harris*, 795 F.3d 820, 821 (8th Cir. 2015).

## II.

To search a person's home, government agents generally must obtain a warrant based on probable cause. *Payton v. New York*, 445 U.S. 573, 589-90 (1980). If an affidavit in support of a warrant contains information that was obtained in violation of the Fourth Amendment, the reviewing court must redact that information and evaluate whether the remainder establishes probable cause. *United States v. Karo*, 468 U.S. 705, 719 (1984); *United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008). Brooks contends that the district court failed to redact information that was fruit of his unlawful detention at the airport. The government argues that the airport detention was not unlawful, but that even if the airport seizure was not justified, the district court properly declined to suppress evidence obtained under the warrant. We will assume for the sake of analysis that the district court was correct about the unlawfulness of the airport detention.

-6-

First, Brooks argues that the court should have redacted the portion of the affidavit that detailed the discovery of the bulk cash. That paragraph explained that on January 23, 2017, the Little Rock office of Homeland Security Investigations "received a notification from the National Bulk Cash Smuggling Center." The notification stated that Brooks's bag had been flagged at TSA screening and that a subsequent search had discovered "a large amount of U.S. currency that was heat sealed in plastic wrap." Brooks claims that the district court assumed without evidence that this information came from TSA agents who acted independently of the unlawful detention. It is at least possible, he argues, that the information might have stemmed from his detention by the Little Rock police.

The record supports the district court's implicit finding that the disputed information was independent of any unlawful seizure. Brooks concedes that the initial search of his bag was a lawful administrative search. That search was conducted by a TSA agent at a TSA screening area. A TSA supervisor then contacted TSA managers, who notified the Little Rock police officers stationed at the airport that an agent had discovered bulk cash. When the officers arrived, Brooks's bag was open and the cash bundles were in plain view. All of this occurred before any seizure of Brooks by the police. The discovery of the vacuum-sealed cash was thus independent of any constitutional violations that may have later occurred.

Brooks next contends that the court should have redacted information about the taking of Julie Harrison's luggage from the Southwest baggage claim area in November 2016. The district court implicitly found that this information was discovered independent of the airport detention of Brooks. Brooks theorizes, however, that his disputed seizure at the airport inspired the agents to review airport records and find the connection between him and Harrison's luggage.

The district court's inference to the contrary is supported by the record. At a 2017 hearing, the affiant from the DEA testified that his investigation of Roderick

Smart began in January 2015. Brooks's name came up around August 2016 when the Bank of America representative reported that Brooks deposited cash into the account of Smart's girlfriend. While the dog alert and scent of marijuana at the airport may have bolstered investigators' suspicions, the more germane discovery was that Brooks had attempted to transport bulk cash in a manner consistent with drug trafficking via the Little Rock airport. It is reasonable to infer that once Brooks's suspicious activities with currency were tied to the airport, investigators would review airport records on that basis alone to determine whether Brooks had engaged in other suspicious activity at the airport. The court thus did not err in finding that investigators independently discovered the baggage incident from November 2016.

Finally, Brooks asserts that his post-*Miranda* warning statements at the police station were unlawfully obtained and should have been redacted from the search warrant affidavit. In particular, Brooks contests the inclusion of his admission that he structured bank transactions to avoid currency reporting requirements, as well as some general information about his businesses. Brooks maintains that his statements to police were the fruit of an airport seizure that the district court declared unlawful. Although neither the district court nor the parties address the subsequent arrest of Brooks, it seems evident that probable cause for the arrest was based on evidence of narcotics found during the airport detention. Therefore, we will assume for the sake of analysis that Brooks was questioned at the police station after an unlawful detention and arrest.

Even so, exclusion of evidence "may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). In the case of disputed statements, a reviewing court must consider whether investigators procured the statement "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Evidence is not subject to suppression, and may be relied upon in a warrant affidavit, "when the

connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Utah v. Strieff*, 579 U.S. 232, 238 (2016).

In determining whether statements are sufficiently attenuated from an illegal seizure, we consider the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (internal citation omitted). Whether the officers warned the suspect under the *Miranda* rule is also an important factor, though not a dispositive consideration. *Rawlings v. Kentucky*, 448 U.S. 98, 107 (1980).

Before Brooks made the disputed admissions, detectives informed him of his right to remain silent, warned that his statements could be used against him, and advised him of his right to an attorney. Brooks acknowledged his rights and agreed to answer questions. That he was warned and voluntarily waived his rights is an important factor that weighs against suppression of the evidence. *Id.*; *United States v. Yorgensen*, 845 F.3d 908, 914 (8th Cir. 2017).

There was also sufficient passage of time and intervening change in circumstances to purge the taint of an unlawful seizure. At least an hour passed between the airport detention and Brooks's arrival at the Little Rock police station. Another hour went by before investigators questioned Brooks. There was a change of scenery and an introduction of new law enforcement personnel who did not make the initial seizure and arrest. The questioning thus did not come hard on the heels of an unlawful arrest, but rather after a period of time that allowed for pause and reflection. These factors support a conclusion that Brooks's statements were a product of his free will and militate against exclusion of the evidence. *See Yorgensen*, 845 F.3d at 914-15 (questioning by an officer with no involvement in the Fourth Amendment violation); *United States v. Whisenton*, 765 F.3d 938, 941-42 (8th

Cir. 2014) (questioning after passage of time); *United States v. Riesselman*, 646 F.3d 1072, 1080 (8th Cir. 2011) (questioning after change in location).

To the extent the officers' conduct at the airport was unlawful, it was not flagrantly so. The district court deemed it "a close call" whether Brooks had consented to the police officer's request to accompany him to the security office and to undergo questioning. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 579 U.S. at 243. If the conduct of the officers indeed crossed the sometimes hazy line between a request for voluntary consent and an implicit command that amounts to a seizure, it was not the sort of serious misconduct that warrants suppression of voluntary statements made later.

Under all of the circumstances, we conclude that even if the detention of Brooks at the airport was unlawful, Brooks's voluntary and warned statements to investigators at the police station were sufficiently disconnected from the unlawful seizure to make them admissible. Accordingly, it was proper for the district court to consider Brooks's statements from that interview about structuring cash withdrawals in evaluating whether the search warrant affidavit established probable cause to search Brooks's home.

After redacting from the affidavit evidence that resulted from the airport detention, we conclude that the remaining information established probable cause to search. That is, the evidence demonstrated a fair probability that contraband or evidence of a crime would be found in the place to be searched. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). The redacted affidavit from February 2017 provided that Brooks deposited cash smelling of marijuana into a bank account belonging to the girlfriend of a known California drug trafficker in August 2016, picked up luggage that a suspected drug smuggler sent to the Little Rock airport in November 2016, attempted to board a flight to California in January 2017 with $112,230 in cash

packaged in a manner "consistent with known narcotics concealment methods," and admitted structuring cash withdrawals from multiple bank locations to avoid currency transaction reports. Under the totality of the circumstances, this information raised a fair probability that Brooks was involved in the cash business of drug trafficking, and that his residence would contain evidence of a drug trafficking offense.

\* \* \*

The judgment of the district court is affirmed.

_____