# United States Court of Appeals
## For the First Circuit

---

No. 02-1540

UNITED STATES OF AMERICA,

Appellee,

v.

JEFFREY DUNNING,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

---

Bjorn Lange, Assistant Federal Public Defender, on brief, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

---

December 10, 2002

---

**Per Curiam**.  Defendant-appellant, Jeffrey Dunning, was charged with one count of tampering with a witness, victim or informant in violation of 18 U.S.C. § 1512(b)(2)(B).  Prior to trial, Dunning moved to suppress an envelope and letter that he had sent to his girlfriend, Dawn Touchette, while he was an inmate at the Merrimack House of Corrections.  The appellant sent the letter, which was seized during a search of the Touchette home made pursuant to a warrant by the Bureau of Alcohol, Tobacco and Firearms, to warn the Touchettes that the ATF was preparing to raid the Touchette home in search of explosive materials.  While searching the house, an ATF agent discovered the letter in the bedroom of Dawn Touchette. The appellant claimed that the seizure of the envelope constituted a violation of his Fourth Amendment protections against unreasonable searches and seizures.  After an evidentiary hearing on January 2, 2002, the district court denied appellant's motion to suppress the letter, finding that the appellant lacked standing to challenge the search of the bedroom and seizure of the letter.  On January 29, 2002, pursuant to a plea agreement, the appellant entered a conditional plea of guilty, reserving the opportunity to appeal the denial of his motion to suppress.  Dunning now appeals the district court's denial of his motion.  For the following reasons, we affirm.

Jeffrey Dunning and Dawn Touchette started dating in 1999.  Dunning would visit Dawn at her family's home where she

lived with her mother and her father, Bradley Touchette. At first, Dunning's visits mainly consisted of sneaking into Dawn's bedroom when her father was away from home. Later, the Touchettes would allow Dunning to spend the night in an extra bedroom. Dunning did not have a key to the Touchette home, to Dawn's room or to the extra room he occasionally stayed in. He did not pay rent; nor did he contribute to the cost of household duties. At no point did he have the right to exclude others from the house or the bedroom he stayed in; by all accounts, Dunning was simply a frequent guest at the Touchettes.

On March 1, 2000, Dunning learned that Dawn Touchette was pregnant. After learning that he was the father, Dunning surrendered himself on outstanding state criminal warrants and went into custody at the Merrimack County House of Corrections. Dunning kept a correspondence with Dawn while he was incarcerated.

At Dunning's request, an ATF agent paid him a visit at the Merrimack County House of Corrections in early May 2000. During that interview, Dunning informed the ATF agent that while he was a guest at the Touchette home, he observed Bradley Touchette storing six fifty-pound bags of explosive materials in a locked freezer in the basement. He also described threats that Touchette had made about using the materials to retaliate against the government for problems with his retirement pension.

Relying on the information provided by the appellant, the ATF obtained a search warrant authorizing its agents to enter the Touchette home in search of the explosive materials. When agents raided the Touchette residence on July 5, 2000, they did not find any explosives, either in the basement freezer or in the rest of the house. The only suspicious item found in the house turned out to be a letter from their own informant, Jeffrey Dunning. While searching Dawn Touchette's bedroom, an ATF agent observed an envelope and letter lying in plain view on the floor. The envelope bore Jeffrey Dunning's name on the return address and was postmarked June 15, 2000 -- approximately one month after Dunning gave an interview to the ATF and two weeks prior to the search of the Touchette home. In the letter, Dunning informed Dawn Touchette that he had been in contact with the ATF. Dunning further informed her that the ATF was on the verge of searching the Touchette home. Anticipating the ATF search, the appellant instructed Dawn to "[g]et every thing [sic] and everything illegal out of that house now." Dunning urged Dawn to "[t]alk to her parents" about his warning.

The envelope and letter were seized. Dunning was charged with one count of tampering with a witness, victim or informant. Prior to trial, Dunning moved to suppress the letter and its contents on the grounds that the search and seizure of the letter violated his Fourth Amendment protection against unreasonable

-4-

searches.  The district court denied the motion to suppress, and Dunning entered a plea of guilty.  He now appeals.  In this appeal, Dunning argues that the district court erred when it determined that he lacked a legitimate expectation of privacy in the letter sufficient to give him standing to challenge the search.  Dunning's claim is based on two arguments.  First, Dunning contends that he had an expectation of privacy in a letter sent to a girlfriend with whom he had an intimate relationship and an understanding that the two would save their letters to each other, and that this expectation ought to be recognized as reasonable.  Second, Dunning argues that because he was a regular guest at the Touchette home for a period prior to his incarceration, he is entitled to an expectation of privacy in the home greater than that afforded to casual visitors.  Both of these arguments fail.

In reviewing a district court's denial of a  suppression motion, this Court reviews the district court's findings of fact for clear error. United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996); United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994).  Contrary to this deferential standard of review for questions of fact, this Court reviews questions of law de novo. Id.  This approach is in accord with Ornealis v. United States, 517 U.S. 690 (1996), in which the Supreme Court employed a dichotomous standard of review in the Fourth Amendment context, reviewing

constitutional questions <u>de</u> <u>novo</u> while employing the deferential clear error standard to review findings of fact.  <u>Id.</u> at 698-99.

While it is well settled that "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy," <u>United States</u> v. <u>Jacobsen</u>, 466 U.S. 109, 114 (1984), the Fourth Amendment does not protect items that a defendant "knowingly exposes to the public." <u>United States</u> v. <u>Miller</u>, 425 U.S. 435, 442 (1976).  Consequently, if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery.  <u>United States</u> v. <u>Gordon</u>, 168 F.3d 1222, 1228 (10th Cir. 1999); <u>United States</u> v. <u>King</u>, 55 F.3d 1193 (6th Cir. 1995).

In this case, Dunning sent the letter to his girlfriend, Dawn Touchette, and encouraged her to share its contents with her parents.  Dunning does not assert a relationship of legal confidentiality with Touchette; his assertion that he has a privacy interest in the letter derives entirely from Dunning's expectation that the two would keep their letters until after Dunning's release from prison, perhaps even to include them in a scrapbook.  However, even if the sentimental letter in question -- sent to tip off the Touchettes that they were the subject of an imminent raid by federal agents -- was indeed a cherished memento to be preserved for the future, this does not change the fact that Dunning relinquished any expectation of privacy he may have otherwise had

in the letter when it was delivered to Dawn Touchette. Id. at 1196.

Dunning's second claim -- that he had a legitimate expectation of privacy in Dawn Touchette's room at the time of the search because he was previously a guest in the Touchette home -- also fails. In order to contest a search or seizure on Fourth Amendment grounds, a defendant has the burden of establishing that he has a legitimate and reasonable expectation of privacy in the premises searched or property seized. Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978). Therefore Dunning can claim the protection of the Fourth Amendment only if he had a legitimate expectation of privacy in the Touchette home in general, and Dawn Touchette's bedroom in particular, during his incarceration at the Merrimack House of Corrections.

Dunning did not have a legitimate expectation of privacy giving him standing to contest the search of the house or the bedroom. The evidence elicited at the suppression hearing clearly establishes that while Dunning was a guest at the Touchette home for a time, his status as a guest terminated when he surrendered himself on the state warrants. He was not in the dwelling immediately preceding the search. Even when Dunning was a guest at the Touchette home, he did not have an ownership or tenant interest in the home; he did not have a key; he could not be in the house

unless someone with a key let him in; he did not have the right to exclude anyone from the house or the bedroom.  Dunning's standing to  contest a search of the Touchette home, if it ever existed, never extended to Dawn Touchette's bedroom, and expired when he ceased to be a guest of the Touchettes.

We hold that appellant failed to bear his burden of proof of establishing a legitimate expectation of privacy, either through his relationship with Dawn Touchette, or in the area where the letter was seized.  <u>Rakas</u>, 439 U.S. at 140-41.  Therefore, the district court properly denied the motion to suppress. Accordingly, the judgment must be affirmed.

**<u>Affirmed</u>**.