UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                   Civil No. 17-cr-79-JL
                                        Opinion No. 2018 DNH 158

Dustin Moss

**MEMORANDUM ORDER**

In advance of a trial on a series of charges related to, among other things, drug trafficking, money laundering, and witness tampering, defendant Dustin Moss moved to suppress approximately 20 pounds of methamphetamine discovered in two Priority Express Mail packages, and any evidence resulting from the searches of those two packages. This motion turns on whether Moss had a reasonable expectation of privacy in the packages, neither of which was addressed to him; whether the warrant to search one of the packages sufficiently described the property to be searched; and whether the warrantless search of the second package fell under the consent and private search exceptions to the warrant requirement.

After an evidentiary hearing and permitting Moss to supplement his arguments, the court denied Moss's motion.[1] Moss then pleaded guilty to one count of attempting to possess with

---

[1] See Order of April 20, 2018.

intent to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).[2]  Though he waived his right to appeal several aspects of his plea, Moss, with the government's consent, "expressly reserve[d] the right to appeal the denial of his Motion to Suppress."[3]  See Fed. R. Crim. P. 11(a)(2).

This order sets forth the bases for the court's denial of Moss's motion in greater detail.  See, e.g., United States v. Joubert, 980 F. Supp. 2d 53, 55 n.1 (D.N.H. 2014), aff'd, 778 F.3d 247 (1st Cir. 2015) (citing In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007)) (noting a district court's authority to later reduce its prior oral findings and rulings to writing).  First, the court addresses whether Moss had a privacy interest in the two packages, neither of which was addressed to him, sufficient to confer on him standing to challenge the searches of those packages.  It then concludes that, even assuming that he has standing, neither search violated the warrant requirements of the Fourth Amendment so as to require suppression of the evidence obtained through them.

---

[2] Plea Agreement (doc. no. 63) at 1.

[3] Id. at 13.

2

## I. **Background**

The court makes the following findings of fact based on the testimony and other evidence received at the suppression hearings.

### A. **The 730 package**

A package bearing the tracking number EL810533730US (the "730 package") was mailed from Las Vegas, Nevada, on April 18, 2017. Weighing a little over 26 pounds, it was addressed to a recipient named O'Rourke at 3 Blackberry Way, apt. 108, in Manchester, New Hampshire. It bore a return address of "Tom fairbanks, 328 Florrie Ave." in Las Vegas.

#### 1. **Search of the 730 package**

On the evening of April 18, United States Postal Inspector Bruce Sweet reviewed a list of packages scheduled to arrive in New Hampshire from Las Vegas, Nevada. Based on his participation in an investigation into Moss and his co-defendant, Katrina Jones, between October 2016 and April 2017, Inspector Sweet was aware of a drug conspiracy wherein packages from Las Vegas containing methamphetamine arrived in New Hampshire, and packages containing cash were sent from New Hampshire to Las Vegas. Some of those packages had "Florrie Ave." as a return address. Accordingly, while the package was still in Las Vegas, Inspector Sweet noticed the 730 package as

3

originating from that street and identified it as suspicious based on his knowledge of that investigation, the origin and destination, and its weight.

When the package arrived in Manchester the next morning, he collected the 730 package and placed it into a package lineup for a drug-sniffing dog. After the dog alerted on the 730 package, Inspector Sweet secured it in the United States Postal Inspection Service's offices.

Working with Assistant United States Attorney William Morse, Sweet applied for a warrant to search the package. His affidavit attached to the warrant application correctly and accurately described the 730 package in "Attachment A" as a "black 'Kicker Speaker' cardboard box," with its dimensions and address.[4]

Having reviewed those materials, the magistrate judge issued a search warrant that same morning. The warrant's caption correctly identified the package, reading: "In the Matter of the Search of USPS Priority Mail Express Package Bearing Tracking Number EL810533730US."[5] In its body, the warrant described the area to be searched as "See Attachment A, as attached hereto and incorporated herein." But, due to a

---

[4] Mot. to Supp. Ex. A (doc. no. 52-2) at 7.

[5] Mot. to Supp. Ex. B (doc. no. 52-3).

4

clerical error in the United States Attorney's Office, "Attachment A" to the issued warrant identified the property to be searched as a <u>completely</u> <u>different</u> <u>package</u>.[6] Inspector Sweet did not review the warrant or its attachments after it issued or notice the erroneous "Attachment A" when he executed the warrant, ultimately served it on O'Rourke, or returned it.

An hour or so after the warrant issued, Sweet searched the 730 package. Inside the box he found a large speaker and, inside the speaker, 12 zip-top bags, each containing almost exactly one pound of a white crystalline substance that tests later identified as methamphetamine. Having replaced the narcotics with miscellaneous items to bring the box to its original weight, he repackaged the speaker, resealed the package, and delivered it to the post office.

### 2. Delivery of the 730 package

Sabrina Moss, the defendant's sister and O'Rourke's dealer, had asked O'Rourke earlier in April to receive a package on behalf of her brother. In exchange, she offered him three-and-

---

[6] Id. at 3. The package described in the warrant's Attachment A is a USPS Priority Mail Express package of a different color (white), size (envelope), and weight (5 ounces), addressed to a different recipient (Mr. Golden) in a different city (Laconia, New Hampshire) from a different sender (Sequoia High School) in a different state (California), and, of course, bears a different tracking number (EL576175385US). Inspector Sweet testified that the package actually described in the warrant's Attachment A related to a package he searched in November 2016.

a-half grams of crack cocaine, which O'Rourke testified he would value at approximately $300. O'Rourke agreed. Sabrina did not tell him when the package would arrive or to expect more than one package. Neither Sabrina nor Moss instructed him either to open or not to open the package.

After Inspector Sweet concluded his search of the package, a postal inspector dressed as a letter carrier delivered a notice to O'Rourke's mailbox that the package had arrived at the post office. Several hours later, Moss met O'Rourke at O'Rourke's apartment, where Sabrina and her boyfriend joined them. They waited several hours at O'Rourke's apartment, on the assumption that the package might yet be delivered there, before decamping. O'Rourke then drove to the post office while Moss, who left the apartment at the same time, drove to a nearby shopping center and parked behind a furniture store.

Inspector Sweet, who was behind the counter at the post office, delivered the 730 package to O'Rourke after O'Rourke presented his license and the notice left in his mailbox. Leaving the post office, O'Rourke met Moss behind the furniture store and placed the package in the back seat of Moss's vehicle. Moss and O'Rourke were both arrested on the spot. O'Rourke was subsequently released on bond.

**B.    The 962 package**

Though he was not expecting one,[7] on April 22, a second parcel addressed to O'Rourke arrived in his apartment's mailbox at 3 Blackberry Way.  This package, also from Las Vegas, bore the tracking number EL652259962US (the "962 package").  A key in his own mailbox indicated a larger package in a bigger mailbox but O'Rourke, wanting nothing to do with it, left both key and package alone.

Brenda Krimtler, a friend of O'Rourke's, retrieved his mail the next day.  She brought the box into the kitchen, opened it, and observed white powder inside.  When she informed O'Rourke of its contents, he instructed her to reseal the 962 package and return it to the mailbox, which she did.  O'Rourke informed his attorney about the package who, with O'Rourke's agreement, in turn relayed that information to Inspector Sweet.  O'Rourke's attorney also informed Inspector Sweet that the 962 package had been opened, that O'Rourke believed it contained narcotics, that O'Rourke no longer wanted it, and that Inspector Sweet could search the package.

---

[7] Moss testified that he asked his sister, Sabrina, to find someone who could receive several packages for him, but there is no evidence that Sabrina told O'Rourke to expect more than one package.

With O'Rourke's attorney's permission, Inspector Sweet called O'Rourke directly later that evening. O'Rourke, likewise, informed Inspector Sweet that his friend had opened the package, that it appeared to contain narcotics, and that he consented to the package being seized and searched.

Armed with permission to search the package from O'Rourke, the addressee, Inspector Sweet did not obtain a warrant. He instead contacted another postal inspector who lived closer to O'Rourke, Inspector Steve Riggins, who retrieved the 962 package. With Inspector Sweet on the phone, Inspector Riggins opened it in his car. Like the 730 package, the 962 package contained eight zip-top bags containing a white substance that later proved to be methamphetamine. Like Krimtler, Inspector Riggins was able to view the bags of white powder after having opened the 962 package, without opening any other container within the 962 package.

## II. **Analysis**

Moss challenges the searches of both packages -- the 730 package on grounds that the warrant was defective and the 962 package on grounds that the search was warrantless. To succeed in such challenges, of course, Moss must demonstrate standing -- that is, that he had a reasonable expectation of privacy in the packages, which were addressed to O'Rourke, not

8

Moss.  Even assuming he had such an expectation, neither of Moss's challenges to the searches succeeds.

### A.    Standing

An individual has a right "to be secure in [his] . . . papers[] and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A search within the meaning of the Fourth Amendment "occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  United States v. D'Andrea, 648 F.3d 1, 5-6 (1st Cir. 2011) (quoting Kyllo v. United States, 533 U.S. 27, 33 (2001)).  "Fourth Amendment rights generally cannot be vicariously asserted."  United States v. Bates, 100 F. Supp. 3d 77, 83 (D. Mass. 2015) (Saris, J.) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)).  The defendant therefore must carry the burden of demonstrating that his "reasonable expectation of privacy in the area searched and in relation to the items seized . . . at the time of the pretrial hearing and on the record compiled at that hearing."  United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988) (internal citations omitted).  "Unless and until the 'standing' threshold is crossed, the bona fides of the search and seizure are not put legitimately into issue."  Id.

"Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable." United States v. Jacobsen, 466 U.S. 109, 114 (1984). Sealed packages in the mail are thus "free from inspection by postal authorities, except in a manner provided by the Fourth Amendment." United States v. Van Leeuwen, 397 U.S. 249, 250 (1970). Despite this general rule, "the Fourth Amendment does not protect items that a defendant 'knowingly exposes to the public.' Consequently, if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery." United States v. Dunning, 312 F.3d 528, 531 (1st Cir. 2002) (quoting United States v. Miller, 425 U.S. 435, 442 (1976)).

Whether a defendant has a privacy interest sufficient to challenge a search of a particular location depends on that defendant's:

> ownership, possession and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case.

United States v. Stokes, 829 F.3d 47, 53 (1st Cir. 2016) (quoting Aguirre, 839 F.2d at 856-57). Invoking these factors, some courts in this Circuit have concluded that a defendant who

is neither the sender nor addressee of a package (like the defendant here) nevertheless has a privacy interest when the recipient acts as a bailee for the defendant.  In Bates, for example, the defendant (1) caused the packages to be sent, (2) meticulously tracked them, and (3) specifically and directly ordered the addressee not to open them, but instead to deliver them to the defendant the moment they arrived.  Bates, 100 F. Supp. 3d at 84.  Similarly, a non-addressee defendant may have a reasonable expectation of privacy when he or she asserted an ownership interest in the package itself, the addressee disclaimed any interest, and no one with any ownership or possessory interest participated in the search.  United States v. Allen, 741 F. Supp. 15, 17 (D. Me. 1990) (Hornby, J.).

By contrast, in United States v. LeClair, the defendant had no expectation of privacy when he was neither the sender nor addressee and made no showing that "he at any time exerted ownership, possession, control, or historical use of the package or its contents."  No. 11-CR-39-GZS, 2011 WL 6341088, at *3 (D. Me. Dec. 19, 2011) (Singal, J.).  And in United States v. Colon-Solis, the defendant lacked any expectation of privacy in a box of cash that he packaged and shipped from New Jersey because he addressed it to a friend in Puerto Rico at her home and asked her to hold it until he arrived.  508 F. Supp. 2d 186, 192 (D.P.R. 2007) (Pérez-Giménez, J.).

The Court of Appeals for the First Circuit has not definitively addressed this issue. It has noted that "many of the federal courts of appeals have been reluctant to find that a defendant holds a reasonable expectation of privacy in mail where he is listed as neither the sender nor the recipient, at least absent some showing by the defendant of a connection . . . ." Stokes, 829 F.3d at 52 (citing decisions of the Fourth, Fifth, Seventh, Eighth, and Eleventh Circuit Courts of Appeals). In Stokes, the Court of Appeals concluded that a defendant lacked an expectation of privacy in the outsides (i.e., addresses and writing on the envelopes) of letters that were addressed to others but placed into his Post Office box. But it declined to "decide whether a defendant ever could have a reasonable privacy interest in mail where he is not listed as addressee or addressor," id. at 52-53, leaving the possibility open. And, though it acknowledged the decisions in Bates and Allen, it specifically avoided "address[ing] the question of whether a defendant in these situations could assert a reasonable expectation of privacy in the searched mail." Stokes, 829 F.3d at 55 n.8. In light of that guidance, the court declines to conclude that Moss lacked a reasonable expectation of privacy in either package solely because they were addressed to O'Rourke instead of Moss, and addresses the question on a package-by-package basis.

12

### 1. The 730 package.

Though there is no evidence that either Moss or Sabrina ever told O'Rourke not to open the 730 package, see Bates, 100 F. Supp. 3d at 84, Moss exerted a certain amount of "ownership, possession, [and] control" over the package, LeClair, 2011 WL 6341088, at *3, possibly creating a bailment relationship with O'Rourke. For example, upon discovering that the package arrived in Manchester, Moss drove to O'Rourke's apartment and waited for O'Rourke to return home from work, retrieve the package, and deliver it to him. And Moss drove with O'Rourke to the post office to retrieve it once O'Rourke received the notice for it, and then waited in a nearby shopping center so that O'Rourke could deliver the package to him directly.

O'Rourke's actions further indicate his understanding that he received the 730 package on Moss's behalf. Specifically, he agreed to receive it at his home in exchange for drugs from Sabrina. When notified of its arrival at the post office, he picked it up and delivered it straight to Moss.

Apart from the potential bailment relationship, Moss may also have had an expectation of privacy in the package at the time that it was searched -- that is, while it remained in the mail stream. Cf. Dunning, 312 F.3d at 531 (sender has reasonable expectation of privacy in letters until they reach recipient). As the one who ordered the package, Moss may have

had an expectation of privacy in the package before it reached O'Rourke, and therefore before O'Rourke, as the addressee, had an opportunity to open it, destroying that expectation. See Bates 100 F. Supp. 3d at 84 (packages searched before they reached bailee).

### 2.   The 962 package.

The evidence of Moss's privacy interest in the 962 package is somewhat less compelling. Again, there is no evidence that either Sabrina or Moss asked O'Rourke to receive a second package or informed him that a second package would arrive. Thus, there is no evidence that O'Rourke held the 962 package as Moss's bailee. Furthermore, the 962 package was not only delivered to O'Rourke but also opened by a third party, Krimtler, before the USPIS seized and searched it. Under these circumstances, any expectation of privacy Moss held in the 962 package likely ceased once it was delivered to O'Rourke. Cf. id.

The court need not definitively resolve the question of Moss's privacy interests in either package, however. Even assuming that he had such an interest sufficient to confer standing to challenge the searches, neither of his challenges to those searches succeeds.

14

**B.  Moss's warrant-based challenges**

The Fourth Amendment shields individuals from "unreasonable searches and seizures."  U.S. Const. amend. IV.  Accordingly, a search of private property is generally unconstitutional unless conducted pursuant to a valid search warrant.  Katz v. United States, 389 U.S. 347, 357 (1967).  Absent a warrant, the prosecution must establish that the search "came within a recognized exception to the Fourth Amendment warrant requirement."  United States v. Doward, 41 F.3d 789, 791 (1st Cir. 1994).

Moss seeks the suppression of evidence from both packages, arguing that neither search complied with the warrant requirements of the Fourth Amendment.  First, he challenges the validity of the warrant obtained before searching the 730 package because, he contends, it failed to describe the place to be searched with the requisite particularity because of the defective Attachment A.  He challenges the admittedly warrantless search of the 962 package as failing to fall within any of the recognized exceptions to the warrant requirement.

Neither challenge warrants suppression of the evidence.  Though the attachment to the warrant to search the 730 package described the wrong package, the face of the warrant listed the correct tracking number and, under the circumstances, the probability that Inspector Sweet -- who had already secured the

15

730 package -- would execute the warrant by searching an incorrect package was exceedingly low.  And both the addressee's consent and the private search doctrine justified the warrantless search of the 962 package.

### 1.    **730 package**

Under the Fourth Amendment's particularity requirement, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "The manifest purpose of [this requirement] is to prevent wide-ranging general searches by the police." United States v. Bonner, 808 F.2d 864, 866 (1st Cir. 1986) (quoting United States v. Leon, 468 U.S. 897, 963 (1984)).  A warrant is therefore facially invalid if it fails to describe with particularity the place to be searched. Groh v. Ramirez, 540 U.S. 551, 557 (2004).  When it so fails, "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity.  The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Id.

"The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and

16

identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" Bonner, 808 F.2d at 866. Here, despite the facially incorrect Attachment A, the evidence suggests that there was no reasonable probability that any other package than the 730 package -- including the one actually described in Attachment A -- would mistakenly be searched.

First, the warrant did contain the 730 package's unique tracking number: it appeared in the caption of the warrant. Second, even before the warrant issued, Inspector Sweet had identified the particular package to be searched by its description (a black "Kicker speaker" box weighing approximately 26 pounds) and, furthermore, had secured it in the USPIS office at the postal facility in Manchester. Finally, Inspector Sweet himself executed the warrant on the box so described, which contained the correct tracking number, and which he had personally secured in the USPIS office. He testified that although he did not read the warrant after it issued, because the magistrate judge made no corrections, he assumed the warrant covered the package that he correctly described in the attachments that he had drafted -- specifically, the 730 package. And that is the package that he searched.

Though perhaps troubling that no one noticed the incorrect Attachment A on the warrant, and while it may have caused

17

ambiguity had the warrant been executed by another inspector, under the totality of the circumstances present in this case, there was little, if any, "reasonable probability that another [package] might be mistakenly searched." Bonner, 808 F.2d at 866. The warrant was not, therefore, facially invalid. See United States v. Vega-Figueroa, 234 F.3d 744, 756 (1st Cir. 2000) (warrant that listed the wrong address not invalid where agent who made observations on which basis the warrant issued also executed it and searched correct apartment). Accordingly, the evidence discovered during the search of the 730 package need not be suppressed.

### 2. 962 package

The parties agree that the USPIS obtained no warrant to search the 962 package. Accordingly, the prosecution bears the burden of establishing that the search of that package "came within a recognized exception to the Fourth Amendment warrant requirement." Doward, 41 F.3d 791. The United States Attorney here argues that the search of the 962 package fell within two such exceptions: that it was justified by O'Rourke's consent and by the private search doctrine. The evidence supports both exceptions.

**Consent.** Both O'Rourke and Inspector Sweet testified that he verbally consented to the seizure and search of the 962

18

package.  That O'Rourke twice affirmatively consented to the search and requested that the USPIS seize the package -- first through his attorney and then directly -- establishes the fact of his consent.[8]

The fact that O'Rourke received the package on Moss's behalf does not vitiate that consent.  First, as the addressee and actual recipient of the package, O'Rourke likely had the actual authority to consent to the search.  His consent, as "one who possesses common authority over premises or effects" is thus "valid as against the absent, nonconsenting person with whom that authority is shared," such as Moss.  United States v. Matlock, 415 U.S. 164, 170 (1974).

Even were he a mere bailee of the 962 package -- contrary to the weight of the evidence, as discussed supra Part III.A.2 -- that status would not invalidate the search.  "A search is valid if, at the time, officers reasonably believe a person who has consented to a search has apparent authority to consent, even if the person in fact lacked that authority."  United States v. Gonzalez, 609 F.3d 13, 18 (1st Cir. 2010).  The Postal

---

[8] "For consent to a search to be valid, the government must prove by a preponderance of the evidence that the consent was uncoerced."  United States v. Bey, 825 F.3d 75, 80 (1st Cir. 2016).  Moss does not argue that O'Rourke's consent in this case was in any sense coerced.  And the fact that O'Rourke, through counsel, affirmatively contacted the USPIS about the package after it arrived strongly suggests that it was not.

Service's Administrative Support Manual authorizes "a postal employee acting with the consent of the addressee or sender" to inspect packages otherwise sealed against inspection. Accordingly, at the time of the search, Inspectors Sweet and Riggins reasonably believed that O'Rourke, as the addressee of the 962 package, had the authority to consent to its search. The search therefore falls within the consent exception to the warrant requirement.

**Private search**.  The search of the 962 package was also justified by the private search doctrine.  The Fourth Amendment protects against warrantless searches by the government, not by private parties.  Jacobsen, 466 U.S. at 115.  "The private search doctrine provides that, if a private actor . . . searches evidence in which an individual has a reasonable expectation of privacy, and then provides that evidence to law enforcement or its agent . . .' [t]he additional invasions of [the individual's] privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search.'"  United States v. Powell, No. 17-1683, slip op. at 8 (1st Cir. July 16, 2018) (quoting Jacobsen, 466 U.S. at 115 (1984)).  This is because "when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that

occurs the Fourth Amendment does not prohibit governmental use of that information." Jacobsen, 466 U.S. at 117.

Under the private search doctrine, "there is no Fourth Amendment violation if the search by law enforcement or its agent is coextensive with the scope of the private actor's private search and there is 'a virtual certainty that nothing else of significance' could be revealed by the governmental search." Powell, slip. op. at 8 (quoting Jacobsen, 466 U.S. at 115). "But if, instead, that search 'exceed[s] the scope of the private search,' then the government must have 'the right to make an independent search' under the Fourth Amendment in order for that search to comport with the Constitution." Id. (quoting Jacobsen, 466 U.S. at 116).

Here, O'Rourke's friend, Krimtler, conducted a private search before the USPIS inspected the package.[9] Specifically, she opened the package, saw that it contained powder, and informed O'Rourke of the fact -- an act that prompted O'Rourke, through his attorney, to contact the USPIS. And the USPIS's subsequent search of the package was coextensive with Krimtler's private search. Inspector Riggins, after seizing the package, opened it and was, likewise, able to view the white powder

---

[9] The defendant does not challenge Krimtler's conduct.

21

contained in clear zip-top baggies.  Accordingly, the private search exception to the warrant requirement applies.

## III. **Conclusion**

Finding that, even assuming that Moss has standing to challenge the searches of the 730 and 962 packages, those searches did not violate the Fourth Amendment, the court DENIED his motion[10] to suppress the evidence discovered during those searches and resulting therefrom, and his motion for reconsideration of the same.[11]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    August 2, 2018,

cc:  John R. Davis, AUSA
     Shane Kelbley, AUSA
     Simon R. Brown, Esq.

---

[10] Document no. 52.

[11] Document no. 60.